Present: All the Justices

WILLIAM H. LUCY, ET AL.

v. Record No. 980770

COUNTY OF ALBEMARLE

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
June 11, 1999

CITY OF CHARLOTTESVILLE

v. Record No. 980771

COUNTY OF ALBEMARLE

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
John E. Clarkson, Rodham T. Delk, Jr., and Donald A.
McGlothlin, Jr., Judges

In these consolidated appeals, we consider whether a citizen-initiated petition for reversion of an independent city to town status under Code § 15.2-4102 (formerly Code § 15.1-965.10(B)) was properly filed in the circuit court prior to the notice specified in Code § 15.2-2907(A) (formerly Code § 15.1-945.7(A)) being given to the Commission on Local Government and the affected local governments.[1]

_____

[1]Subsequent to the filing of the petition for reversion at issue in these appeals, Title 15.1 was superseded by Title 15.2, with the relevant statutory provisions now appearing in Code §§ 15.2-2900 et seq. and 15.2-4100 et seq. Because there is no material change between the former and current versions of the statutes we address, we will refer herein to the current statutes.

The parties do not dispute the legislative history of these and other relevant statutes or the procedural posture of the cases.  However, the specific statutes in question are in apparent conflict and susceptible to differing constructions.  Thus, the issue framed by these appeals is uniquely one of necessary judicial construction to reconcile these statutes consistent with legislative intent.  Accordingly, in order to place the facts and the specific issue of these appeals in proper focus, we begin our analysis with a review of the legislative background of the general statutory scheme concerning changes in the boundaries, structure, and status of counties, cities, and towns in this Commonwealth.

Although it has been almost three decades since the General Assembly first passed legislation to address the problems of relations among local governments within this Commonwealth, the underlying concerns with respect to this issue remain unchanged.  In County of Rockingham v. City of Harrisonburg, 224 Va. 62, 294 S.E.2d 825 (1982), we said:

> Relations among units of local government pose problems of continuing concern to the General Assembly.  Different people in different communities have different needs for different reasons.  Government seldom has sufficient resources to provide all it would like to give its citizens and never all they would like to receive.  Necessarily, needs and means must be balanced and compromises must be reached.  How well local governments succeed in promoting the common weal depends in large part upon

2

how they are organized and how they interact with their neighbors.

Id. at 71, 294 S.E.2d at 828-29.

To address these concerns, in 1971 the General Assembly authorized a study by the Commission on City-County Relationships. Acts 1971, c. 234. As a result of that study, the General Assembly enacted comprehensive legislation in 1979 with the purpose and intent "to create a procedure whereby the Commonwealth will help ensure that all of its localities are maintained as viable communities in which their citizens can live." Code § 15.2-2900. To carry out this purpose and intent, the General Assembly established the Commission on Local Government. Id.

The General Assembly initially mandated and empowered the Commission on Local Government, inter alia, "[t]o investigate, analyze, and make findings of fact . . . as to the probable effect" of any proposed annexation, declaration of immunity from annexation, establishment of a town or independent city, or transition from a county to a city. Code § 15.2-2903(4). Relevant to the present appeals, the General Assembly in 1988 amended the former version of this statute to include as an additional responsibility of the Commission on Local Government the administrative review "of any proposed action . . . [t]o

3

make a transition from city status to town status."  Code

§ 15.2-2903(4)(e).

The procedure for invoking an administrative review by the Commission on Local Government on matters within its purview is set out in Code § 15.2-2907, one of the two statutes principally at issue in the present appeals.  In pertinent part, that statute provides:

> A. No locality or <u>person</u> shall file any action in any court in Virginia . . . to make a transition from city status to town status, without first notifying the Commission and all local governments located within or contiguous to, or sharing functions, revenue, or tax sources with, <u>the locality proposing such action</u>.  Upon receipt of the notice the Commission shall hold hearings, make investigations, analyze local needs and make findings of fact and recommendations . . . No court action may be filed until the Commission has made its findings of facts.

> . . . .

> B. The Commission shall report, in writing, its findings and recommendations to the affected localities, any other localities likely to be affected . . . and to any court which may <u>subsequently</u> consider the action.

> . . . .

> Before making the report the Commission shall conduct hearings at which any interested person may testify.  Prior to the hearing, the Commission shall publish a notice of the hearing once a week for two successive weeks in a newspaper of general circulation in the affected counties and cities.

(Emphasis added.)

On its face, Code § 15.2-2907 is a clear directive expressing the intent of the General Assembly that all proposed actions to make a transition from city status to town status be subject to an administrative hearing and review by the Commission on Local Government prior to any court action being filed. Such hearing and review is initiated by notice to the Commission on Local Government. The statute mandates that all affected local governments also be notified of the proposed action and that the Commission on Local Government publish notice to the general public prior to its hearing on the matter.

In 1988, in addition to including the responsibility of the Commission on Local Government to review actions concerning transition from city status to town status set out in Code § 15.2-2907, the General Assembly also enacted the statutory scheme for instituting such actions. Under that statutory scheme, now found at Code § 15.2-4100 et seq., there are two methods by which an action for reversion from city status to town status may be instituted. Code § 15.2-4101 provides that:

> A. Any city in this Commonwealth with a population at the time of the latest United States decennial census of less than 50,000 people, after fulfilling the requirements of Chapter 29 (§ 15.2-2900 et seq.), may by ordinance passed by a recorded majority vote of all the members thereof, petition the circuit court for the city, alleging that the city meets the criteria set out in § 15.2-4106 for an order granting town status to the city. The circuit court with which the petition is filed shall notify the Supreme Court, which shall appoint a special court to

5

hear the case as prescribed by Chapter 30 (§ 15.2-3000 et seq.) of this title.

B. Before instituting a proceeding under this chapter for a grant of town status, a city shall serve notice on the county attorney, or if there is none, on the attorney for the Commonwealth, and on the chairman of the board of supervisors of the adjoining county that it will, on a given day, petition the circuit court for a grant of town status. The notice served on each official shall include a certified copy of the ordinance. A copy of the notice and ordinance, or a descriptive summary of the notice and ordinance and a reference to the place within the city or adjoining county where copies of the notice and ordinance may be examined, shall be published at least once a week for four successive weeks in some newspaper having general circulation in the city and adjoining county. The notice and ordinance shall be returned after service to the clerk of the circuit court. Certification by the owner, editor or manager of the newspaper publishing the notice and ordinance shall be proof of publication.

(Emphasis added.)

Code § 15.2-4102 provides that:

Voters equal in number to fifteen percent or more of the registered voters of the city as of January 1 of the year in which the petition is filed may petition the circuit court for the city, stating that it is desirable that such city make the transition to town status. All of the signatures on the petition shall have been made and filed within a twelve-month period. A copy of the petition shall be served on the city attorney and the county attorney, or if there is none, on the attorney for the Commonwealth for the county and on the mayor of the city and the chairman of the board of supervisors of the adjoining counties. A copy of the petition shall be published at least once a week for four successive weeks in a newspaper having general circulation in the city and the adjoining county. The case shall proceed in all respects as though instituted in the manner prescribed in § 15.2-4101, and the court shall forthwith refer

6

the petition to the Commission on Local Government for review pursuant to Chapter 29 (§ 15.2-2900 et seq.).

(Emphasis added.)

By express language, before a city may file its petition for reversion to town status in the circuit court, Code § 15.2-4101 requires the city to comply with the notice provisions of Code § 15.2-2907(A). This requirement is harmonious with the prohibition contained in Code § 15.2-2907(A) against the "locality . . . fil[ing] any action in any court in Virginia . . . to make a transition from city status to town status, without first notifying the Commission and all [affected] local governments."

The material distinction between the filing of a city-initiated petition for reversion to town status under Code § 15.2-4101 and the filing of a citizen-initiated petition for such reversion under Code § 15.2-4102 arises in the final sentence of the latter statute, which provides that "[t]he case shall proceed in all respects as though instituted in the manner prescribed in 15.2-4101, and the court shall forthwith refer the petition to the Commission on Local Government for review pursuant to Chapter 29 (§ 15.2-2900 et seq.)." (Emphasis added.) It is this manifest conflict between Code § 15.2-4102, requiring a citizen-initiated petition for reversion of a city to town status to be filed first in circuit court followed by a

7

referral by the court to the Commission on Local Government, and Code § 15.2-2907(A), requiring notice of an intended reversion of a city to town status and a hearing and review by the Commission on Local Government prior to the filing of any court action, that is the focal point of these appeals. Within this statutory scheme, the following factual and procedural events occurred.

On November 26, 1996, William H. Lucy and four other representative petitioners (the petitioners) pursuant to Code § 15.2-4102 filed a petition in the Circuit Court of the City of Charlottesville with signatures purported to represent at least fifteen percent of the registered voters of the City of Charlottesville. The petition stated that "for the reasons that will appear in the evidence which will be offered at subsequent hearings . . . it is desirable that the City of Charlottesville make the transition to town status." Copies of the petition were served on the city attorney and mayor of the City of Charlottesville and the county attorney and chairman of the board of supervisors of Albemarle County, the adjoining county. The petitioners concede that no written notice of their intention to seek reversion to town status had been given to the Commission on Local Government or any affected local government prior to the filing of the petition in the circuit court.

On December 13, 1996, the City of Charlottesville (the City) filed an answer to the petition. The City requested that it be made a party to the suit and that "the Special Court, following its appointment, enter [an order] . . . referring this proceeding, following the Special Court's disposition of all pleas, demurrers, or other preliminary motions as may be filed, to the Commission on Local Government for review pursuant to [Code § 15.2-2900 et seq.]." On December 16, 1996, we appointed a panel of three judges as authorized by Code § 15.2-3000 to consider the petition as a special court.

On December 18, 1996, Albemarle County (the County) filed an answer to the petition. The County challenged the adequacy of the petition asserting doubt whether the petitioners represented fifteen percent of the registered voters of the City. Accordingly, the County asserted that "referral to the Commission on Local Government prior to determining the jurisdictional status of the petitioners would be inappropriate because of the costly and time-consuming nature of the proceedings before the Commission on Local Government." The County did not assert in its answer that the petition had been improperly filed due to lack of prior written notice to the Commission on Local Government and the affected local governments. On June 3, 1997, the court entered an order appointing a special commissioner charged with the

9

responsibility to determine the validity and sufficiency of the signatures to the petition.

On June 6, 1997, the County filed a motion to dismiss the petition. It was in this motion that the County first asserted that the notice provision of Code § 15.2-2907(A) precluded the petitioners from filing the petition prior to giving notice to the Commission on Local Government and the affected local governments described in that statute. The County alleged that "the notice provisions are jurisdictional and/or mandatory condition precedent to filing this action."

Following a hearing on the County's motion to dismiss, the court indicated that it would sustain the motion. The petitioners and the City both filed motions to reconsider. The motions for reconsideration asserted that the notice requirement of Code § 15.2-2907(A) was not jurisdictional and was not implicated until the court referred the matter to the Commission on Local Government pursuant to Code § 15.2-4102. The petitioners also sought leave to amend their petition to include an allegation of actual notice to the Commission on Local Government and the affected local governments.

In an opinion letter subsequently adopted by reference in the final order, the court opined that "the specific and affirmative notice requirements in the comprehensive statute, [Code § 15.2-2907(A)], which also specifically apply to

10

reversion suits, are not overruled by the silence as to notice in the limited statute for citizen-initiated reversions, [Code § 15.2-4102]. In the present case, prior notice to the Commission [on Local Government] was required and not given by the citizen petitioners."

In a final order dated January 20, 1998, the court sustained the County's motion to dismiss and denied the motions to reconsider. In that order, the court found that Code § 15.2-2907(A) required the petitioners to give prior notice to the Commission on Local Government and the affected local governments; that they had failed to give such notice; and, that this failure was a jurisdictional defect which required dismissal of the petition. The court expressly stated that it had not made any determination of "the eligibility of the City of Charlottesville for town status" in the future. We awarded appeals to the petitioners and the City.

Because we find that the dispositive issue of these appeals is whether Code § 15.2-2907(A) requires the petitioners to give notice to the Commission on Local Government and the affected local governments prior to filing their petition under Code § 15.2-4102, we will confine our discussion of the respective positions of the parties to that issue.

The petitioners and the City assert that Code § 15.2-4102 expressly permits a citizen-initiated petition for reversion

11

from city status to town status to be filed in the circuit court prior to notice being given to the Commission on Local Government and affected localities. They further assert that the express distinction between city-initiated petitions and citizen-initiated petitions overrides the broad general language of Code § 15.2-2907(A). While recognizing the facial conflict between these two statutes, they contend that the General Assembly intended for procedural challenges to the validity of a citizen-initiated petition to be resolved by a court prior to a referral to the Commission on Local Government. Thus, they further contend that this conflict is reconciled by a statutory construction implicating the notice provisions of Code § 15.2-2907(A) only when a court refers a <u>valid</u> citizen-initiated petition to the Commission on Local Government pursuant to Code § 15.2-4102.

The County contends that this construction of Code § 15.2-4102 improperly treats it as "an isolated fragment of a law setting out a specific procedure applicable only to citizen-initiated reversions." Rather, the County contends that Code § 15.2-2907(A) is a comprehensive general statute touching upon the same subject matter as Code § 15.2-4102 and that the two must be construed *in pari materia*. When the two code sections are so construed, the County asserts that, absent specific language in Code § 15.2-4102 regarding the pre-filing notice

12

requirements of Code § 15.2-2907(A), there is a presumption "the legislature did not intend to innovate on, unsettle, disregard, alter or violate a general statute or system of statutory provisions."  Prillaman v. Commonwealth, 199 Va. 401, 405-06, 100 S.E.2d 4, 7 (1957).  While acknowledging that there is an apparent conflict between the two statutes concerning the time for filing a citizen-initiated petition in the circuit court, the County contends that the notice requirements of Code 15.2-2907(A) are clear and mandatory.  Thus, the County concludes that the requirement of notice under Code § 15.2-2907(A) prevails and resolves any conflict with Code § 15.2-4102.

We agree with the County that the statutes in question are to be considered in pari materia.  As we said in Prillaman "[t]he general rule is that statutes may be considered as in pari materia when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects.  Statutes which have the same general or common purpose or are parts of the same general plan are also ordinarily considered as in pari materia." Prillaman, 199 Va. at 405, 100 S.E.2d at 7.

However, the mere fact that statutes relate to the same subject or are part of the same general plan does not mean that they cannot also be in conflict.  Indeed, the reason for considering statutes in pari materia is that this permits "any

13

apparent inconsistencies [to] be ironed out whenever that is possible."  Commonwealth v. Sanderson, 170 Va. 33, 38, 195 S.E. 516, 518 (1938).  Thus, we have recognized that the requirement that we consider statutes as *in pari materia* is only one rule of statutory construction among many:

> In the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are to be gathered by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation.

Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914); see also Waller v. Commonwealth, 192 Va. 83, 89, 63 S.E.2d 713, 716 (1951); The Covington Virginian, Inc. v. Woods, 182 Va. 538, 548-49, 29 S.E.2d 406, 411 (1944).  Guided by this rule of statutory construction, we turn now to the specific statutes in question.

As noted above, Code § 15.2-2900 et seq. clearly give the Commission on Local Government the authority and responsibility to review all matters touching upon the status of local governments to ensure that all localities are maintained as viable communities in which their citizens can live.  It is equally clear that the purpose of Code § 15.2-2907(A) is to invoke in a timely manner the Commission on Local Government's

14

fact-finding process on any of the matters within its purview to ensure that all affected local governments have notice of and an opportunity to be heard in that process.

In this manner, the overall procedural scheme embodied in Code § 15.2-2907 promotes settlement of disputes between localities without resort to court action by the provision of subsection A that permits the Commission on Local Government to "actively seek to negotiate a settlement of the proposed action," and with the agreement of the parties to "appoint an independent mediator" to facilitate such settlement.  Thus, it is manifest that the General Assembly's primary intent was to permit, where possible, a settlement of disputes between localities prior to any mandated resolution by a court.  To that end, Code § 15.2-2907(A) unequivocally prohibits the filing of any court action until the Commission on Local Government has been notified and completed its review.[2]

---

[2]We note that when the General Assembly in 1988 amended the former version of Code § 15.2-2907(A) to include "person" within the statute's mandate for pre-filing notice to the Commission on Local Government and affected localities, it created a patent ambiguity in the statute.  Obviously, a "person" cannot be "the locality proposing such action" contained in the emphasized phrase of the statute previously noted in this opinion.  This ambiguity, while not controlling in our analysis, further illustrates the conflict between Code § 15.2-2907(A) and Code § 15.2-4102 created in 1988 that necessitates statutory construction to reconcile these statutes.

15

We think, however, it is significant that there is no authority anywhere in the pertinent statutory scheme for the Commission on Local Government to decline to review an action that may appear to lack merit. Specific to the issue in these appeals, there is no provision for the Commission on Local Government to suspend its proceedings in order to permit a court to consider legal challenges to a citizen-initiated petition under Code § 15.2-4102, as the County suggests could be done. Rather, Code § 15.2-2907(A) provides that "[u]pon receipt of the notice the Commission shall hold hearings, make investigations, analyze local needs and make findings of facts and recommendations."

As the County itself acknowledged in its answer to the petition in this case, proceedings before the Commission on Local Government are "costly and time-consuming." It is reasonable, therefore, that the General Assembly would not intend for private citizens to have the unfettered power to bring frivolous or procedurally deficient matters before the Commission on Local Government and thereby subject the Commission on Local Government and affected local governments to the unnecessary expenditure of taxpayer resources.

In this context, Code § 15.2-4102 may be reasonably reconciled with Code § 15.2-2907(A) when the former is construed as a "gatekeeper" statute. Under this construction, the sole

16

purpose for treating citizen-initiated petitions for reversion of a city to town status differently from such city-initiated petitions is to permit the city and the county directly involved to raise procedural challenges to the efficacy of citizen-initiated petitions in the court where they are filed, thus avoiding unnecessary involvement of the Commission on Local Government and other local governments in those cases where the petitions would fail without regard to their merits. Once those challenges are resolved, the statute expressly mandates that the court refer the petition to the Commission on Local Government without taking further action on the merits of the petition until the provisions of Code § 15.2-2900 et seq. have been satisfied.

This construction of Code § 15.2-4102 as a gatekeeper statute is bolstered by our further conclusion that, contrary to the concern expressed by the court below, Code § 15.2-4102 does contain a comprehensive notice scheme. That scheme readily may be reconciled with the intent of Code § 15.2-2907(A) that affected local governments have a full and fair opportunity to participate in the Commission on Local Government's proceedings prior to a trial on the merits of a citizen-initiated petition for reversion to town status. Code § 15.2-4102 mandates that a copy of the petition be served on the attorney and mayor of the city and the attorney and chairman of the board of supervisors

17

of its adjoining county or counties. In addition, this statute mandates publication of a copy of the petition in a newspaper having general circulation in those localities. Thereafter, the statute mandates that the court forthwith refer the petition to the Commission on Local Government which in turn is subject to the mandate of Code § 15.2-2907(B) to publish a notice of its hearing in a newspaper of general circulation in the affected counties and cities. These notice requirements ensure that the affected governments and other interested parties will have an adequate opportunity to be heard before the Commission on Local Government issues its final report and before any hearing on the merits is conducted by the court. In this context, Code § 15.2-4102 and Code § 15.2-2907(A) are reconciled to the greatest extent possible and, moreover, are just in their operation.

For these reasons, we hold that the trial court erred. Thus, we will reverse the judgment of the court below and remand the case for further proceedings consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.

18