Present:  All the Justices

INDUSTRIAL DEVELOPMENT AUTHORITY
OF THE CITY OF ROANOKE

OPINION BY
v.  Record No. 011446      JUSTICE LAWRENCE L. KOONTZ, JR.
March 1, 2002

BOARD OF SUPERVISORS,
MONTGOMERY COUNTY

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Richard C. Pattisall, Judge

In this appeal, the dispositive issue is whether the trial court erred in construing the term "finance" in Code § 15.2-4905 of the Industrial Development and Revenue Bond Act (the Act), Code § 15.2-4900 through -4920, to include the "refinance" of existing bonds issued under the Act.

BACKGROUND

The pertinent facts are not in dispute and, for purposes of our resolution of this appeal, may be briefly summarized in the following fashion without a recitation of the technical aspects of those facts.  The Industrial Development Authority of the City of Roanoke (the IDA) was created on October 21, 1968.  In 1997, the IDA agreed to issue bonds to finance the construction and equipping of a new hospital in Montgomery County (the County) by Carilion Health System (Carilion).  As required by Code § 15.2-4905, the IDA obtained the concurrence of the County, which had its own industrial development authority, prior to issuing the bonds.  As a condition of its concurrence,

the County entered into a private agreement with Carilion that required Carilion's hospital to pay the County a fee of .09375% on the outstanding principal balance of the bonds as of July 15, 1998, and a like percentage on the outstanding balance in each succeeding year that the bonds remained unpaid.

On May 11, 2000, the IDA adopted a resolution to issue bonds for the benefit of Carilion that would, in part, refinance the 1997 bonds and also provide new funds for additional construction and equipment at the hospital and elsewhere. Because the revenue from these bonds would pay off the debt on the 1997 bonds, the hospital's payments to the County under the 1997 agreement would cease.

Carilion and the County could not agree upon a fee to be paid for the County's concurrence to permit the 2000 bond issue. Because of this impasse, the IDA decided to use funds from the 2000 bonds to permit Carilion to refinance only the debt on the existing hospital in the County and not to finance any new construction in the County. The County nonetheless contended that its concurrence was still required to permit the refinancing of the 1997 bonds by the 2000 bonds.

The IDA filed a motion for judgment in the Circuit Court of the City of Roanoke seeking judicial determination of the validity of the 2000 bonds. The County was made a party and

2

opposed the suit.  The County contended that the IDA was required to obtain the County's concurrence in the 2000 bond issue and that the County had "expressly withheld its consent to the [refinancing] of any previously-issued bonds."  Accordingly, the County contended that the 2000 bonds were not valid.

The parties agreed that the meaning of the term "finance" as used in the first sentence of the final paragraph of Code § 15.2-4905 was the dispositive issue before the trial court. In a final order dated June 12, 2001, the trial court ruled that this term "encompasses refinancing, sometimes referred to as refundings, such as the proposed [2000 bonds] at issue in this proceeding."[*]  Accordingly, the trial court further ruled that the concurrence of the County was required to validate the 2000 bonds and without that concurrence, the bonds were not valid in regard to the refinancing of the outstanding indebtedness on Carilion's hospital in the County.  By order dated September 14, 2001, we awarded the IDA this appeal.

DISCUSSION

In pertinent part, Code § 15.2-4905 provides:

---

[*]For purposes of this appeal, we need not address any technical distinction between "refinancing" and "refunding." But see 26 U.S.C. § 147(f)(2)(A) and (f)(2)(D)(2001)(public approval needed for qualified private activity bonds; no public

3

If a locality has created an industrial development authority pursuant to this chapter or any other provision of law, no other such authority, not created by such locality, shall <u>finance</u> facilities, . . . within the boundaries of such locality, unless the governing body of such locality in which the facilities are located or are proposed to be located, concurs with the inducement resolution adopted by the authority, and shows such concurrence in a duly adopted resolution.

(Emphasis added).

Both parties contend that the language of Code § 15.2-4905 is clear and unambiguous. The County contends that the generally accepted meaning of the term "finance" includes refinancing and that the legislature intended for that term to have that meaning in Code § 15.2-4905. The IDA contends that the plain language of Code § 15.2-4905 as a whole requires the concurrence of a locality only when revenue bonds are used for the initial financing of facilities and not when such bonds are used for refinancing existing bonds. We agree with the IDA.

Well established principles guide our analysis of the issue presented in this appeal. When the language of a statute is clear and unambiguous, we are bound by the plain meaning of that language. <u>Vaughn, Inc. v. Beck</u>, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001). To determine whether there is any ambiguity in a

_____

approval needed for the refunding of qualified private activity bonds).

4

statute, we read the statute in its entirety, rather than isolating particular words or phrases. Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001). Moreover, we read related statutes in pari materia in order to give, when possible, consistent meaning to the language used by the General Assembly. Lucy v. County of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480, 485 (1999).

When the General Assembly uses two different terms in the same act, those terms are presumed to have distinct and different meanings. Shelor, 261 at 480, 544 S.E.2d at 349. When analyzing language in an act, we must assume that the General Assembly chose with care the words it used, and we are bound by those words when construing the act. Additionally, when the General Assembly includes specific language in one section of an act, but omits that language from another section, we presume that the exclusion of the language was intentional. Halifax Corp. v. First Union National Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001).

In Code § 15.2-4901, the General Assembly identified the specific purpose of "assisting in the acquisition . . . of medical facilities," as well as "assisting in the refinancing of medical facilities," and also used the phrase "financing, and refinancing" to define different uses of bonds issued under the

5

Act.  In Code § 15.2-4908, the General Assembly made specific provisions for the issuance of "refunding bonds" to redeem "[a]ny bonds of the authority at any time outstanding."

Applying the previously stated principles, it is clear that the General Assembly intended the term "finance" as used in Code § 15.2-4905 to have a specific meaning that excludes the concept embodied in the term "refinancing" as used elsewhere in the Act. We hold that, as used in Code § 15.2-4905, the term "finance" relates to the concept of acquisition only.  Thus, this term does not apply to bonds used to refinance existing revenue bonds issued under the Act.  Accordingly, the trial court erred in ruling that the IDA was required to obtain the County's concurrence in the 2000 bond issue to refinance the 1997 bonds and that in the absence of such concurrence the 2000 bonds were not valid.

CONCLUSION

For these reasons, we will reverse the trial court's judgment and enter final judgment for the IDA validating the 2000 bond issue.

Reversed and final judgment.