PRESENT: All the Justices

KENNETH T. CUCCINELLI, II,
IN HIS CAPACITY AS
ATTORNEY GENERAL OF VIRGINIA

                              OPINION BY

v.  Record No. 102359     JUSTICE LEROY F. MILLETTE, JR.
                               March 2, 2012

RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Paul M. Peatross, Jr., Judge Designate

The threshold issue in this case is whether the University of Virginia is a "person" under the Virginia Fraud Against Taxpayers Act (FATA or Act), Code §§ 8.01-216.1 through -216.19.  For the reasons that follow, we conclude that it is not.

I.  Background

This case arises from two Civil Investigative Demands (CIDs) issued to the University of Virginia and the Rector and Visitors of the University of Virginia (collectively, UVA) by Attorney General Kenneth T. Cuccinelli, II, pursuant to FATA. The CIDs sought information relating to the research of climate scientist Dr. Michael Mann, who taught at UVA from 1999 to 2005.  While employed by UVA, Dr. Mann received a series of grants to fund his research on climate change.

Amidst allegations that some climate scientists had falsified data to indicate a dramatic upturn in the earth's

1

surface temperatures as a result of the use of fossil fuels, the Attorney General launched a FATA investigation into the grants Dr. Mann received while employed by UVA. The Attorney General issued two CIDs pursuant to Code § 8.01-216.10(A), one to the University and one to its Rector and Visitors.[*] The content of the CIDs was identical. In relevant part, each CID provided:

> This [CID] is issued in connection with an investigation by the Attorney General into possible violations by Dr. Michael Mann of §§ 8.01-216.3(A)(1), (2), and (3) of FATA. The investigation relates to data and other materials that Dr. Mann presented in seeking awards/grants funded, in whole or in part, by the Commonwealth of Virginia or any of its agencies as well as data, materials and communications that Dr. Mann created, presented or made in connection with or related to the following awards/grants.

The CID then went on to list five grants, each of which was on Dr. Mann's curriculum vitae. Four of the grants were funded by the federal government and one was funded by UVA.

UVA petitioned the circuit court to set aside the CIDs, arguing, among other things, that the Attorney General had no statutory authority to serve CIDs upon agencies of the Commonwealth and that the CIDs were defective in that they failed to state the nature of the conduct alleged. The circuit

---

[*] At oral argument, counsel for both sides agreed that, for the purposes of this case, the entities were one and the same; Deputy Attorney General Wesley G. Russell, Jr., explained that UVA had been served with process under both titles merely to be thorough and avoid error.

2

court issued a letter opinion rejecting UVA's position that it was not subject to FATA investigations, finding that UVA is "a proper subject for a CID and the Attorney General may investigate grants made with Commonwealth of Virginia funds to professors such as Dr. Mann."  The circuit court also concluded, however, that the CIDs were unlawful because they failed to comply with FATA's requirement that CIDs "state the nature of the conduct constituting the alleged violation of [FATA] that is under investigation."  Code § 8.01-216.11.  The circuit court therefore granted UVA's petition and set aside the CIDs, without prejudice.

The Attorney General appeals, asserting several assignments of error, and UVA assigns cross-error to the circuit court's conclusion that UVA constitutes a "person" under FATA and is thus subject to CIDs under the Act.

## II.  Discussion

We will first address UVA's assignment of cross-error because it is a dispositive threshold issue:  if UVA is not a "person" under FATA, then it cannot be the proper subject of a CID, and the Court need not consider the Attorney General's assignments of error.  See, e.g., DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 142 n.*, 670 S.E.2d 704, 705 n.* (2009) (declining to address non-dispositive assignments of error where a dispositive assignment of error is addressed).

3

A.    Standard of Review and Applicable Principles
of Statutory Construction

Whether the University is a "person" under FATA is a question of statutory interpretation.  As such, it " 'presents a pure question of law and is accordingly subject to de novo review by this Court.' "  Warrington v. Commonwealth, 280 Va. 365, 370, 699 S.E.2d 233, 235 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)).

When construing a statute, our primary objective is " 'to ascertain and give effect to legislative intent,' " as expressed by the language used in the statute.  Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)) (internal quotation marks omitted).  " 'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.' "  Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)).  And if the language of the statute " 'is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.' "  Id. at 349-50, 706 S.E.2d at 862 (quoting Conyers, 273 Va. at 104, 639 S.E.2d at 178).

4

In evaluating a statute, moreover, we have said that "consideration of the entire statute . . . to place its terms in context to ascertain their plain meaning does not offend the rule because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.' " Eberhardt v. Fairfax County Employees' Retirement System Board of Trustees, 283 Va. 190, 194-95, ___ S.E.2d ___, ___ (2012) (quoting Virginia Electric & Power Co. v. Board of County Supervisors, 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983)). Thus, " '[a] statute is not to be construed by singling out a particular phrase.' " Id. at 195, ___ S.E.2d at ___ (quoting VEPCO, 226 Va. at 388, 309 S.E.2d at 311).

We apply these principles of statutory construction to the issue raised by UVA in its assignment of cross-error.

B.   Definition of "Person" under FATA

Pursuant to FATA, the Attorney General may serve a CID upon "any person" whom he has "reason to believe . . . may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." Code § 8.01-216.10.  For purposes of FATA, a "person" is defined as "any natural person, corporation, firm, association, organization, partnership, limited liability company, business or trust."  Code § 8.01-216.2.  Because this definition does

5

not specifically include the agencies of the Commonwealth, UVA contends that it is not a "person" under FATA and therefore is not subject to CIDs. Conversely, because the General Assembly has indicated elsewhere in the Code that UVA is a corporation, and this Court has so held, the Attorney General argues that the definition necessarily includes UVA. See Code § 23-69 ("The board of visitors of the University of Virginia shall be and remain a corporation."); Phillips v. Rector & Visitors of the University of Virginia, 97 Va. 472, 475, 34 S.E. 66, 67 (1899) ("[UVA,] from its foundation, has been wholly governed, managed, and controlled by the State through a corporation created for the purpose, under the style 'The Rector and Visitors of the University of Virginia,' which is a public corporation.").

Because UVA is indeed a public corporation, and the term "corporation" can be found in the definition of a "person" under FATA, Code § 8.01-216.2, the circuit court ended its investigation at this juncture. We find that this conclusion ignored several significant reasons why "person" in Code § 8.01-216.2 cannot properly be read to include agencies of the Commonwealth.

1. Commonwealth Agencies and Statutes
of General Applicability

6

It is well-settled law that Commonwealth agencies are not bound by statutes of general application "no matter how comprehensive the language, unless named expressly or included by necessary implication."  Commonwealth ex. rel. Pross v. Board of Supervisors of Spotsylvania County, 225 Va. 492, 494, 303 S.E.2d 887, 889 (1983) (emphasis added).  This "ancient rule of statutory construction" has been "consistently applied by this Court for more than a century."  Id.  See, e.g., Whiteacre v. Rector, 70 Va. (29 Gratt.) 714, 716 (1878) ("It is old and familiar law . . . that where a statute is general, and any . . . interest is diverted or taken from the king, . . . the king shall not be bound unless the statute is made by express words or necessary implication to extend to him."); Levasser v. Washburn, 52 Va. (11 Gratt.) 572, 577 (1854) ("[L]egislative acts are intended to regulate the acts and rights of citizens; and it is a rule of construction not to embrace the government or effect its rights by the general rules of a statute, unless it be expressly and in terms included or by necessary and unavoidable implication.").

The Commonwealth has conceded that Code § 8.01-216.2 is a statute of general applicability.  And we have consistently held that UVA is an arm or agency of the Commonwealth.  Rector & Visitors of the University of Virginia v. Carter, 267 Va. 242, 245, 591 S.E.2d 76, 78 (2004) (referring to UVA as an

agency of the Commonwealth); James v. Jane, 221 Va. 43, 51, 282 S.E.2d 864, 868 (1980) (noting that UVA is an "agency of the Commonwealth of Virginia . . . entitled to the protection of the immunity of the state."). The same is true of other state universities. See, e.g., George Mason University v. Floyd, 275 Va. 32, 37, 654 S.E.2d 556, 558 (2008). Other courts have agreed with our construction. See, e.g., Wilson v. University of Virginia, 663 F. Supp. 1089, 1092 (W.D. Va. 1987) ("It cannot be disputed that the University of Virginia is an arm of the state entitled to eleventh amendment protection."). The Virginia Administrative Code also lists UVA as an administrative agency. 8 VAC 85. Finally, the consistent position of the Attorney General's opinions has been that state universities are Commonwealth agencies, with all the benefits and obligations that accompany such status, including exemptions from statutes of general applicability. See, e.g., 1983 Op. Atty. Gen. 381 ("Generally, the State and its agencies are not bound by any statute, unless the statute in express terms is made to extend to the State. Virginia Polytechnic Institute and State University is a State agency for purposes of the State's general exemption from statutory and local requirements." (internal citations and footnote omitted)).

In Richard L. Deal & Associates, Inc. v. Commonwealth, 224 Va. 618, 620, 299 S.E.2d 346, 347 (1983), the Court

8

specifically applied this principle to a statute utilizing the term "person." There, an agency of the Commonwealth refused to abide by an arbitration provision of a contract on the ground that it could not be bound by such a clause. The plaintiff argued that the Commonwealth was bound by the provision because it was a "person" authorized to enter into an arbitration agreement under Code § 8.01-577. The Court disagreed, holding that "the sovereign is a person or party within the intendment of a statute only when the General Assembly names it expressly or by necessary implication." Id.

Code § 8.01-216.2, the definitional portion of FATA, contains no express inclusion of the Commonwealth in its definition of "person." Nor do we find the term "corporation" to be sufficient to expressly include corporate agencies of the Commonwealth such as public universities. This conclusion is evidenced by the incongruity that would be introduced into the Code as a whole, beyond FATA, by affirming the circuit court's interpretation. The Code is replete with definitions of "person" that include the term "corporation" but do not otherwise include governmental entities. See, e.g., Code §§ 4.1-401 (Wine Franchise Act), 5.1-89 (Air Carriers), 6.2-2200 (Motor Vehicle Title Loans), 10.1-1000 (Cave Protection Act). The General Assembly has also demonstrated throughout the Code its ability to define the term "person" to include

governmental bodies when it so intended.  See, e.g., Code

§§ 5.1-1 (Aircraft, Airmen, and Airports Generally), 6.2-100

(Financial Institutions and Services, General Provisions),

8.01-412.9 (Uniform Interstate Depositions and Discovery Act),

10.1-560 (Erosion and Sediment Control Law).  The General

Assembly could have defined "person" accordingly in Code

§ 8.01-216.2.  Since the General Assembly has expressly

included the Commonwealth and its agencies when the General

Assembly so intended and expressly excluded the Commonwealth

and its agencies elsewhere in the Code, we cannot find that

FATA expressly includes UVA under its definition of "person"

merely because the definition includes corporations.  See,

e.g., Halifax Corp. v. Wachovia Bank, 268 Va. 641, 654, 604

S.E.2d 403, 408 (2004) (stating that, when the legislature

omits language from one statute that it has included in

another, courts may not construe the former statute to include

that language, as doing so would ignore "an unambiguous

manifestation of a contrary intention" of the legislature).

      We do observe the express use of the term "agency"

elsewhere in FATA:  the word "agency" appears in the definition

of "Commonwealth" in Code § 8.01-216.2, and an express

reference to "agency" can be found in Code § 8.01-216.8, a

section of FATA addressing certain actions that are barred,

relief from employment discrimination, and waiver of sovereign

immunity in the case of retaliatory action. Because neither of these references pertains directly to a "person" under the statute, we find that they do not constitute the type of express reference required by this Court in Deal. If anything, the use of the term "agency" elsewhere in the Act lends greater strength to our belief that the General Assembly would have expressly included the term "agency" in the definition of "person," had it been intended. We operate from the basic principle of statutory construction that, when the General Assembly opts to invoke two different terms within the same act, "those terms are presumed to have distinct and different meanings." Industrial Development Authority of Roanoke v. Board of Supervisors of Montgomery County, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002). The express use of the word "agency" in Code § 8.01-216.8 implies that, had the General Assembly intended its definition of "person" in Code § 8.01-216.2 to encompass agencies, it would have done so, rather than use the term "corporation," which applies to some arms of the Commonwealth but not all.

We likewise reject the Attorney General's claim that UVA is swept into the definition of "person" by necessary implication. A necessary implication is "[a]n implication so strong in its probability that anything to the contrary would be unreasonable." Black's Law Dictionary 822 (9th ed. 2009).

11

The Attorney General's argument for a "necessary implication" amounts to a policy preference for CIDs as an investigatory tool.  The language of the Act still functions without including Commonwealth agencies within the statute's definition of corporations.  We therefore do not find that Commonwealth agencies are included by "necessary implication."

We recognize that the third paragraph in Code § 8.01-216.8 seems to address a private party bringing an action against a Commonwealth agency.  See Ligon v. County of Goochland, 279 Va. 312, 318, 689 S.E.2d 666, 669-70 (2010) (involving a retaliatory discharge claim made by an employee against the county pursuant to Code § 8.01-216.8).  This raises the possibility that the General Assembly intended agencies to be persons under Code § 8.01-216.3 (the false claims provision).  The less-than-clear statement of Code § 8.01-216.8, however, occurs outside of the primary portions of FATA addressing definitional terms, false claims, and CIDs.  None of these primary sections make reference to Commonwealth agencies as persons and all function more coherently – as discussed in Part II.B, infra – when construed otherwise.  We do not find that this one anomalous phrase creates such a strong implication as to render any other interpretation unreasonable.

In sum, neither by express language nor by necessary implication does FATA provide the Attorney General with

12

authority to issue CIDs to Commonwealth agencies.  We remain unconvinced that this statute of general applicability was intended to apply to corporate bodies that are arms of the Commonwealth.

2.  Functional Incongruity within the Statute

As we have previously held, evaluation of the plain meaning of a statute permits the consideration of the legislative act as a whole.  Eberhardt, 283 Va. at 194-95, ___ S.E.2d. at ___.  We recognize that functional inconsistencies exist in some portion of FATA when "person" is always construed to include Commonwealth agencies as well as when it is never construed to include Commonwealth agencies.  Given this unfortunate conflict, we are left to select the definition that best refines the Act "as a consistent and harmonious whole so as to effectuate the legislative goal."  VEPCO, 226 Va. at 387-88, 309 S.E.2d at 311.  The following functional incongruities, however, caused by defining a Commonwealth agency as a "person," do superior damage to FATA as a whole.  Accordingly, we decline to include agencies in the definition.

The definitional portion of FATA in Code § 8.01-216.2 applies to all subsequent portions of the Act.  As a result, the "person" subject to CIDs under Code § 8.01-216.10 is defined in the same way as the "person" "liable to the Commonwealth" under the false claims provision in Code § 8.01-

13

216.3.  As UVA notes, there is no waiver of sovereign immunity subjecting the Commonwealth to the false claims provision.  An agency cannot be a "person" "liable to the Commonwealth" when there has been no express waiver of sovereign immunity in the statute.

There is an express waiver of sovereign immunity in FATA in Code § 8.01-216.8, in the context of discrimination protection from retaliation for employees of the Commonwealth who report violations of FATA.  The express waiver there only serves to highlight the absence of such a waiver in other parts of the Act.  In its 2011 amendment, the General Assembly specifically chose to attach the sovereign immunity waiver only to the retaliatory discharge portion of Code § 8.01-216.8, and not to the other portions of the statute.

FATA also separately defines "Commonwealth" in Code § 8.01-216.2 as the "Commonwealth of Virginia, any agency of state government, and any political subdivision of the Commonwealth."  As we have said, UVA is unambiguously an agency of the Commonwealth.  Carter, 267 Va. at 245, 591 S.E.2d at 78. As a result, under the circuit court's ruling, UVA fits under the definitions of both "person" and "Commonwealth" in FATA.

This is again inconsistent with the principle, discussed supra, that, "[w]hen the General Assembly uses two different terms in the same act, those terms are presumed to have

14

distinct and different meanings." Industrial Development Authority, 263 Va. at 353, 559 S.E.2d at 623. The consequence is no mere blunder in statutory construction. Defining a corporate-form agency of the Commonwealth under the term "Commonwealth" in one definition and "person" in a separate definition in Code § 8.01-216.2 introduces functional incongruity into FATA.

Code § 8.01-216.5(A) allows a "person" to bring a civil action for FATA violations "for the person and for the Commonwealth . . . in the name of the Commonwealth." The Commonwealth may then intervene and proceed with the action, although the "person" may continue as a party subject to certain limitations. Code §§ 8.01-216.5(B) and -216.6(A). The provisions of Code §§ 8.01-216.5 through -216.8 repeatedly treat the "person" that initially brought the private action as a separate entity from the "Commonwealth." This distinction is lost if, as the circuit court held, the term "person" is construed as including agencies of the Commonwealth.

In addition, as not all Commonwealth agencies are corporations, reading "corporations" to include UVA would produce the inexplicable and awkward result that state agencies operating as public corporations are subject to FATA while other arms of the Commonwealth are not. We find it unlikely that the General Assembly intended such a result. In light of

15

the multiple inconsistencies raised by such an interpretation, we conclude that the General Assembly did not intend Code § 8.01-216.2 to include agencies of the Commonwealth in its definition of "person."

### 3. Noscitur a Sociis

Finally, the principle of noscitur a sociis – that a word is known by the company it keeps – suggests that the term "corporation" in FATA excludes governmental agencies:

> The maxim of noscitur a sociis provides that the meaning of doubtful words in a statute may be determined by reference to their association with related words and phrases. When general words and specific words are grouped together, the general words are limited and qualified by the specific words and will be construed to embrace only objects similar in nature to those objects identified by the specific words.

Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003). The definition of "person" in Code § 8.01-216.2 includes "natural person" and a list of similarly related entities: "corporation, firm, association, organization, partnership, limited liability company, business or trust." Accompanied by these other terms, "corporation" should be understood as a similarly oriented private sector entity, and not as encompassing an agency of the Commonwealth.

### C. Other Issues

As a result of this Court's conclusion that UVA is not a "person" under the statute, we need not reach the assignments

16

of error raised by the Attorney General. Because the statute does not give the Attorney General authority to issue CIDs to UVA, all other issues are rendered moot.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court setting aside the CIDs, but, unlike the circuit court, we set aside the CIDs with prejudice, on the different ground that the University of Virginia, as an agency of the Commonwealth, does not constitute a "person" under the Fraud Against Taxpayers Act and therefore cannot be the proper subject of a CID. Accordingly, we enter final judgment here in favor of the Rector and Visitors of the University of Virginia.

<u>Affirmed and final judgment.</u>

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

Like the majority, I would affirm the circuit court's judgment granting the petition filed by the Rector and Visitors of the University of Virginia (UVA) to set aside the Attorney General's Civil Investigative Demands (CIDs) served upon UVA pursuant to Code § 8.01-216.10 of the Virginia Fraud Against Taxpayer's Act (FATA) (Code §§ 8.01-216.1 through -216.19). Unlike the majority, however, I would affirm the circuit court in issuing its judgment without prejudice. I disagree with the majority's threshold determination that UVA,

17

as an agency of the Commonwealth, is exempt from FATA – which is the majority's rationale for setting aside the CIDs with prejudice.

Concluding that UVA is subject to the Attorney General's investigative authority under FATA, I would affirm the circuit court on its finding that the CIDs were facially deficient, but only on the ground that they were deficient in "stat[ing] the nature of the conduct constituting the alleged violation" of FATA that was under investigation, as expressly required by Code § 8.01-216.11.  I would reject the circuit court's holding that the CIDs were also required to contain the Attorney General's "reason to believe" that UVA was in possession of material or information relevant to that investigation under the terms of Code § 8.01-216.10(A), as I read no such requirement in the statute.

I. Application of FATA to UVA

FATA is enforceable by both the Attorney General and private citizens.  Under Code § 8.01-216.4, the Attorney General is given the authority to investigate a FATA violation and bring a civil action under FATA against an alleged violator implicated in the investigation.  To aid the Attorney General in conducting the investigation, Code § 8.01-216.10 authorizes the Attorney General to issue CIDs, which may require the recipient to produce documentary material, answer

18

written interrogatories and/or give oral testimony.  Under Code § 8.01-216.5, a private citizen may also bring a FATA civil action "in the name of the Commonwealth," subject to a number of conditions and restrictions.

Code § 8.01-216.8, in turn, sets forth limits on the circuit court's jurisdiction to adjudicate certain actions initiated by private citizens under FATA.  In carving out those limitations, the statute, in my opinion, plainly evinces the General Assembly's intent to bring the agencies of the Commonwealth within the scope of the investigative and civil enforcement provisions of FATA, subject to the statute's jurisdictional limitations.  Code § 8.01-216.8 provides, in relevant part:

> No court shall have jurisdiction over an action brought under this article against any department, authority, board, bureau, commission, or agency of the Commonwealth, any political subdivision of the Commonwealth, a member of the General Assembly, a member of the judiciary, or an exempt official <u>if</u> the action is based on evidence or information known to the Commonwealth when the action was brought. For purposes of this section, "exempt official" means the Governor, Lieutenant Governor, Attorney General and the directors or members of any department, authority, board, bureau, commission or agency of the Commonwealth or any political subdivision of the Commonwealth.

<u>Id.</u> (emphasis added).  By the express terms of this provision, the only limit specifically placed upon the institution of a FATA civil action against an agency of the Commonwealth is

19

where the action is initiated by a private citizen based "on evidence or information known to the Commonwealth when the action was brought." Id. FATA imposes no such jurisdictional limitation on actions initiated by the Attorney General. This means, in my opinion, that the Attorney General may bring a FATA action against an agency of the Commonwealth in the same manner that the Attorney General may do so against any other person or entity alleged to have presented a false claim in violation of FATA under Code § 8.01-216.3(A).[1] To interpret Code §§ 8.01-216.3(A) and -216.8 otherwise would mean that a

---

[1] Code § 8.01-216.3(A), in setting forth the elements of a FATA violation, provides in relevant part, as follows:

A. Any person who:

1. Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

2. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

3. Conspires to commit a violation of subdivision 1 [or] 2 . . .

shall be liable to the Commonwealth for a civil penalty of not less than $ 5,500 and not more than $ 11,000, plus three times the amount of damages sustained by the Commonwealth.

A person violating this section shall be liable to the Commonwealth for reasonable attorney fees and costs of a civil action brought to recover any such penalties or damages. All such fees and costs shall be paid to the Attorney General's Office by the

20

private citizen could do what the Attorney General could not do in terms of initiating a FATA action against the numerous entities and individuals, including agencies of the Commonwealth, listed in Code § 8.01-216.8 as quoted above. And, yet, the Attorney General, in acting for the Commonwealth, could then proceed with such action initiated by a private citizen. See Code §§ 8.01-216.5 and -216.6. Such an interpretation of these statutes would lead to this absurd result, which the General Assembly surely did not intend. As this Court has repeatedly stated, in the context of statutory construction, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (internal citations and quotation marks omitted).

Because an agency of the Commonwealth falls within the definition of the term "[a]ny person" in Code § 8.01-216.3(A) under my reading of this statute in conjunction with Code § 8.01-216.8, it follows, I believe, that the Attorney General

defendant and shall not be included in any damages or civil penalties recovered in a civil action based on a violation of this section.

(Emphasis added.)

21

has the authority to serve a CID on UVA, as an agency of the Commonwealth, based on an application of the same definition of the term "any person" under Code § 8.01-216.10(A).  Pursuant to Code § 8.01-216.10(A), the Attorney General may serve a CID upon "any person" that the Attorney General "has reason to believe . . . may be in possession, custody, or control of any documentary material or information relevant to a [FATA] investigation."  In short, I would apply the same definition to the term "any person" as it appears in both Code § 8.01-216.3(A) and Code § 8.01-216.10(A), and that term would include UVA as an agency of the Commonwealth.

My reading of Code § 8.01-216.10 is indeed dictated by its common sense application.  If the legislature intended to allow the Attorney General to bring a FATA action against an agency of the Commonwealth, the legislature undoubtedly intended to grant the Attorney General the authority to obtain relevant investigative information from an agency of the Commonwealth through the issuance of a CID to the agency, whether the object of the investigation was the agency or some third party.  See McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627-28 (1957) (explaining that "in the construction of a statute the court will look to the whole body of the Act to determine the true intention of each part. All of its parts must be examined so as to make it harmonious if possible.").

22

Furthermore, this interpretation of Code § 8.01-216.10 is bolstered by the fact that, pursuant to Code § 8.01-216.4, the filing of a FATA civil action by the Attorney General must be predicated upon an investigation conducted by the Attorney General into whether a violation of Code § 8.01-216.3 has occurred.  See Code § 8.01-216.4 ("The Attorney General shall investigate any violation of Code § 8.01-216.3. If the Attorney General finds that a person has violated or is violating § 8.01-216.3, the Attorney General may bring a civil action under this section.").  Thus, the Attorney General would be required to conduct an investigation into a possible FATA violation involving a state agency before bringing a FATA civil action against the agency or a third party.  To do so, the Attorney General, no doubt, would have to obtain information from the agency, as in the instant case, and the CID would be the Attorney General's primary means of obtaining that information under FATA's statutory scheme.[2]

For these reasons, in my judgment, UVA is not exempt from the Attorney General's authority to issue CIDs pursuant to Code § 8.01-216.10.

II. Evaluation of CIDs Issued to UVA

---

[2] Nine of the nineteen statutes comprising FATA (Code §§ 8.01-216.10 through -216.18) address the substance and utilization of the CID under this statutory scheme.

23

Because I would hold that the Attorney General was authorized to issue CIDs to UVA, I would proceed, as did the circuit court, to review the CIDs at issue for their conformity to FATA's substantive requirements. The review must be limited, however, to determining the facial validity of the CIDs since there was no evidentiary hearing on UVA's petition to set aside the CIDs.

Code § 8.01-216.11 provides that each CID "shall state the nature of the conduct constituting the alleged violation of a false claims law that is under investigation, and the applicable provision of law alleged to be violated." The CIDs before us for review state that they were "issued in connection with an investigation by the Attorney General into possible violations by Dr. Michael Mann of [Code] §§ 8.01-216.3(A)(1), (2), and (3) of FATA." They further provide that "[t]he investigation related to data and other materials that Dr. Mann presents in seeking awards/grants funded, in whole or in part, by the Commonwealth of Virginia or any of its agencies as well as data, materials and communications that Dr. Mann created, presented or made in connection with or related to [five specifically identified] awards/grants . . . ." I agree with the circuit court that this description failed to sufficiently describe "the nature of the conduct constituting the alleged violation[s]," as required by Code § 8.01-216.11. That is, it

24

did not sufficiently state what the Attorney General suspected Dr. Mann did that was "false or fraudulent" in violation of Code § 8.01-216.3(A).

I disagree with the circuit court, however, in its interpretation and application of Code § 8.01-216.10(A) in relation to the court's review of the sufficiency of the CIDs. As previously noted, subsection A of the statute provides that, "[w]henever the Attorney General . . . has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a [FATA] investigation," the Attorney General may issue a CID to such "person" and require this recipient to produce documentary material, answer written interrogatories and/or give oral testimony. In an alternative ruling, the circuit court held that, under the terms of Code § 8.01-216.10(A), the CIDs issued to UVA were defective on their face because they did not set forth the Attorney General's "reason to believe" that UVA was in possession of material or information pertaining to the subject investigation. I would reject this holding as there is no requirement in Code § 8.01-216.10 or any other provision of FATA that the CID must contain the Attorney General's "reason to believe" that the recipient of the CID possesses such material or information. The statutory requirements under FATA

25

for what must be contained in a CID are limited to Code § 8.01-216.11.[3]

I would thus affirm the circuit court's judgment setting aside the CIDs issued by the Attorney General to UVA, but, unlike the majority, I would do so without prejudice.

---

[3] UVA indicates that the circuit court relied upon yet an additional ground for holding that the CIDs were defective, which was purportedly the circuit court's determination that the Attorney General could not investigate the four "federal grant funds" from the total of five grants listed in the CIDs because FATA only applies to funds provided by the Commonwealth. I do not believe the circuit court so held, as the circuit court only postulated in its letter opinion that, "[i]f the Attorney General and [UVA] agree that the first four listed grants are federal grants, this [c]ourt supports the position of [UVA] that the Attorney General should not be able to investigate these grants . . . ." In any event, the limited record in this case cannot support a decision on that issue. Without knowing the specific nature of those grants, no ruling could be made as to whether or not they were subject to FATA.