Opinion by Justice WILLIAM C. MIMS.
 

 In this appeal, we consider whether Code § 38.2-209(A) requires a trial judge, rather than a jury, to determine whether an insurer committed a bad faith breach of an insurance contract warranting an award of attorney's fees to the insured.
 

 I. BACKGROUND AND MATERIAL PROCEEDINGS
 

 In 2000, REVI, LLC ("REVI") purchased a five-acre parcel of residential property along the Potomac River in Fairfax County (the "Property"). At that time, REVI also purchased a title insurance policy from Chicago Title Insurance Company ("Chicago Title"), which insured against "loss or damage" caused by "[a]ny defect in or lien or encumbrance on the title," among other risks.
 

 In 2004, REVI discovered that the Property was subject to a number of restrictions contained in a stipulation arising out of a condemnation action filed by the United States in 1963. These restrictions prohibited tree removal except in limited circumstances, prescribed permissible building heights, and provided that the property could be developed only in accordance with a "master plan" approved by the United States Secretary of the Interior. Upon learning of the restrictions, REVI filed a claim with Chicago Title.
 

 In 2005, Chicago Title accepted the claim and began negotiations with the National Park Service, a division of the United States Department of the Interior, seeking a release of the restrictions. The negotiations resulted in a new agreement (the "Release and Easement Agreement"), which recognized that REVI could subdivide the Property and construct five residences in accordance with the original stipulation without the consent of the United States. The Release and Easement Agreement modified slightly the prohibition on tree removal, allowing REVI to request
 permission to
 remove certain trees from the Property. However, the Release and Easement Agreement carried over the restriction on building height and created some additional restrictions. After receiving assurances that Chicago Title would indemnify it for any diminution in the Property's value as a result of the restrictions, REVI signed the Release and Easement Agreement in September 2011.
 

 Subsequently, Chicago Title informed REVI that the restrictions contained in the Release and Easement Agreement did not diminish the value of the Property, and as a result, REVI had not suffered a compensable loss under the policy. However, Chicago Title invited REVI to submit an updated Proof of Loss.
 

 In April 2012, REVI submitted an updated Proof of Loss, claiming that the restrictions contained in the Release and Easement Agreement had diminished the value of the property by $1.6 million. Chicago Title reiterated its position that the restrictions contained in the Release and Easement Agreement did not diminish the value of the Property, and it denied REVI's claim.
 

 On April 2, 2013, REVI filed a complaint in the Circuit Court of Fairfax County, alleging that Chicago Title had breached the title insurance policy. REVI also alleged that Chicago Title had acted in bad faith, and it requested an award of attorney's fees and costs pursuant to Code § 38.2-209. REVI demanded a jury trial "on all counts so triable."
 

 Chicago Title filed a motion seeking to bifurcate the trial and seeking to have the trial judge, rather than the jury, consider the issues of bad faith and attorney's fees under Code § 38.2-209(A). Chief Judge Dennis J. Smith ordered the trial to be bifurcated, but he also ruled that Code § 38.2-209(A) permitted the jury to determine whether Chicago Title had breached the insurance contract in bad faith, and accordingly, permitted the jury to award attorney's fees.
 

 Judge Brett A. Kassabian presided over the jury trial. The jury found that Chicago Title had breached the contract and awarded REVI $1,241,000 in damages. Then, the jury found that Chicago Title had acted in bad faith and awarded REVI $442,000 in attorney's fees and costs.
 

 After receiving the verdicts, Judge Kassabian sua sponte suspended the final order. He then asked the parties to submit post-trial briefs on whether Code § 38.2-209(A) permits a jury to
 determine whether an insurer breached an insurance contract in bad faith and award attorney's fees and costs.
 

 Upon further consideration, Judge Kassabian vacated the jury's award of attorney's fees and costs, ruling that Code § 38.2-209(A) requires a judge, not a jury, to determine whether an insurer committed a bad faith breach of an insurance contract warranting an award of attorney's fees. Judge Kassabian then reconsidered the evidence de novo and concluded that the evidence was insufficient to prove that Chicago Title had acted in bad faith.
 

 REVI filed a petition for appeal challenging (1) the ruling that only a judge, not a jury, may determine whether an insurer breached an insurance contract in bad faith, and accordingly, award attorney's fees and costs to the insured pursuant to Code § 38.2-209(A) and (2) the factual finding that Chicago Title did not act in bad faith. We awarded REVI an appeal only on its first assignment of error.
 

 II. ANALYSIS
 

 A. Standard of Review
 

 We review questions of statutory interpretation de novo.
 
 Eberhardt v. Fairfax Cnty. Emps. Ret. Sys.,
 

 283 Va. 190
 
 , 194,
 
 721 S.E.2d 524
 
 , 526 (2012). We look to the words of the statute to determine its meaning, and we consider the entire statute to "place its terms in context."
 

 Id.
 

 "[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal."
 
 VEPCO v.
 

 Board of Cnty. Supervisors,
 

 226 Va. 382
 
 , 387-88,
 
 309 S.E.2d 308
 
 , 311 (1983).
 

 B. The Meaning of "court" in Code § 38.2-209
 

 Code § 38.2-209(A) states:
 

 [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy ... or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the
 
 court
 
 may award. However, these costs and attorney's
 fees shall not be awarded unless the
 
 court
 
 determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.
 

 (Emphasis added.) REVI argues that the meaning of "court," as used in Code § 38.2-209(A), is ambiguous. REVI contends that the word "court" when used in the Code sometimes includes a "jury" and may refer to either the judge or the jury in this statute. To support its argument, REVI draws an analogy between Code § 38.2-209(A) and a common law bad faith claim. REVI argues that a determination of bad faith is a factual finding, and it asserts that the common law entitled litigants to a jury trial on questions of fact. REVI concludes that interpreting "court" to exclude a jury alters the common law rule, ignores canons of statutory construction, and violates its constitutional right to have a jury decide whether bad faith exists. We disagree.
 

 Code § 38.2-209 traces its origins to former Code § 38.1-32.1, enacted in 1982. 1982 Acts ch. 576. As enacted, former Code § 38.1-32.1 (Cum. Supp. 1982) provided that the insured could recover "costs and such reasonable attorney fees as the
 
 trial judge
 
 after verdict may award if it is determined by such
 
 trial judge
 
 in such case that the insurer has not in good faith either denied coverage or failed or refused to make payment to the insured under such policy." (Emphasis added.)
 

 Two years later, the General Assembly directed the Virginia Code Commission to study Title 38.1 of the Code, consisting of the Commonwealth's insurance laws, and "report its findings in the form of a revision." H.J. Res. 1, Va. Gen. Assem. (Reg. Sess. 1984). The Commission submitted its report to the General Assembly in 1986. Virginia Code Commission,
 
 Report to the Governor and General Assembly of Virginia [The Revision of Title 38.1 of the Code of Virginia]
 
 (Jan. 1986), H. Doc. No. 17 (1986). Subsequently, the General Assembly enacted 1986 Acts ch. 562 (the "Recodification Act"), titled "An Act to amend the Code of Virginia by adding a title numbered 38.2 ... and to repeal Title 38.1 of the Code of Virginia ... so as to revise, rearrange, amend and
 recodify the insurance laws of Virginia generally." The Recodification Act enacted the text currently codified as Code § 38.2-209(A).
 
 [1]
 

 REVI invokes the "presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law."
 
 West Lewinsville Heights Citizens Ass'n v. Board of Supervisors,
 

 270 Va. 259
 
 , 265,
 
 618 S.E.2d 311
 
 , 314 (2005) (citations omitted). It contends that the term "trial judge" clearly excluded a jury. Therefore, it argues that the substitution of "court" for "trial judge" leads to the conclusion that "court" refers to either a judge or a jury. However, "there is [also] a presumption that a recodified statute does not make substantive changes in the former statute unless a contrary intent plainly appears in the recodified statute."
 
 Waldrop v. Commonwealth,
 

 255 Va. 210
 
 , 214,
 
 495 S.E.2d 822
 
 , 825 (1998) (citing
 
 State Farm Mut. Auto. Ins. v. Major,
 

 239 Va. 375
 
 , 378,
 
 389 S.E.2d 307
 
 , 309 (1990) ). Thus, we turn to the language of the entire Recodification Act to determine whether the General Assembly intended to make a substantive change.
 
 See
 

 Eberhardt,
 

 283 Va. at 194-95
 
 ,
 
 721 S.E.2d at 526
 
 (courts may reference the Acts of Assembly as the "authoritative text" of a single legislative enactment).
 

 From the Recodification Act, the provision subsequently codified as Code § 38.2-807 stated:
 

 In any action against an unlicensed insurer upon an insurance contract issued or delivered in this Commonwealth to a resident of
 this Commonwealth or to a corporation authorized to do business in this Commonwealth, the court may allow the plaintiff a reasonable attorney fee if (i) the insurer has failed to make payment in accordance with the terms of the contract for thirty days after demand prior to the commencement of the action and (ii) the court concludes that the refusal was vexatious and without reasonable cause. The fee shall not exceed twelve and one-half percent of the amount that the
 
 court or jury
 
 finds the plaintiff is entitled to recover against the insurer.
 

 1986 Acts ch. 562 (emphasis added).
 
 [2]
 
 The meaning of this text is plain: the General Assembly did not intend for the word "court" to include "jury" in this provision. Thus, Code § 38.2-807 clearly requires the judge, not the jury, to determine whether the insurer acted in bad faith before awarding attorney's fees to the insured.
 

 Significantly, Code § 38.2-807 -like Code § 38.2-209 -regulates the court's authority to award attorney's fees and costs to the insured when an insurer breaches an insurance contract, limiting its authority to instances of bad faith. We construe "all statutes
 
 in pari materia
 
 in such a manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious."
 
 Lucy v. County of Albemarle,
 

 258 Va. 118
 
 , 129-30,
 
 516 S.E.2d 480
 
 , 485 (1999) ;
 
 Eberhardt,
 

 283 Va. at 195
 
 ,
 
 721 S.E.2d at 526
 
 ("[W]hen a term is used in different sections of a statute, we give it the same meaning in each instance unless there is a clear indication the General Assembly intended a different meaning."). In light of the relationship between the two sections in this single enactment, we conclude that "court," as used in Code § 38.2-209(A), means "judge." Accordingly, the judge, not the jury, must determine whether the insurer breached the insurance contract in bad faith before it may award attorney's fees and costs to the insured pursuant to Code § 38.2-209(A).
 

 Our conclusion is consistent with the commonly accepted definition of "court," which is "[a] tribunal constituted to administer justice [or t]he judge or judges who sit on such a tribunal." Black's Law Dictionary 430 (10th ed.2014);
 
 see
 

 Alexandria Gazette Corp. v. West,
 

 198 Va. 154
 
 , 162,
 
 93 S.E.2d 274
 
 , 281 (1956) ("[T]he word 'court' refers sometimes to the judicial institution, at other times to the judicial officer, and still at other times to the place where a court is being held.").
 

 The case relied upon by REVI,
 
 Beasley v. Bosschermuller,
 

 206 Va. 360
 
 ,
 
 143 S.E.2d 881
 
 (1965), is not to the contrary. In that case, we considered a different statutory provision requiring "courts" to take judicial notice of the statutory tables of speed and stopping distances of vehicles.
 
 Id.
 
 at 366,
 
 143 S.E.2d at 886
 
 (quoting provisions currently codified at Code § 46.2-880 ). Given
 the context of the statute, we reasoned that the General Assembly intended "to include juries within the meaning of the word 'courts' " and concluded that courts could instruct juries "as to the contents of the statute which are pertinent to the issues in a particular case."
 

 Id.
 

 Nothing in Code § 38.2-209 or the Recodification Act suggests that the General Assembly intended to include juries within the meaning of "court" in this context.
 

 We also observe that the General Assembly plainly stated its intent behind the Recodification Act. When the legislature directed the Commission to study former Title 38.1, it recited that the provisions of former Title 38.1 had become rife with "inconsistencies both in style and substance." H.J. Res. 1, Va. Gen. Assem. (Reg. Sess. 1984). The General Assembly further recited that the provisions of former Title 38.1 needed to be reorganized and revised for "grammar, clarity and purpose," and that substantive changes were required to account for developments in the industry.
 

 Id.
 

 The Commission addressed these concerns in its report, identifying the principal changes in the introduction and additional substantive changes at the beginning of each chapter, and providing drafting notes
 throughout. As explained, the substitution of "court" for "trial judge" made the provision codified as Code § 38.2-209 consistent with a related provision within the title.
 
 [3]
 
 Moreover, the Commission did not indicate that it intended to make a substantive change by substituting the term "court" for "trial judge" in Code § 38.2-209.
 
 See The Revision of Title 38.1 of the Code of Virginia
 
 (Jan. 1986), H. Doc. No. 17, at 12-13.
 

 The Recodification Act "was the legislative implementation" of the Commission's report on the revision of former Title 38.1.
 
 Eberhardt,
 

 283 Va. at 196
 
 ,
 
 721 S.E.2d at 527
 
 . The General Assembly enacted the Commission's recommendations with few amendments, and no amendments to the recommended language now codified as Code § 38.2-209. Therefore, we accept the report as "persuasive authority" that the General Assembly did not intend to
 make a substantive change in Code § 38.2-209.
 
 Newberry Station Homeowners Ass'n v. Board of Supervisors,
 

 285 Va. 604
 
 , 617,
 
 740 S.E.2d 548
 
 , 555 (2013).
 

 C. The Right to a Jury Trial Does Not Apply to Proceedings Under Code § 38.2-209
 

 We find no merit in REVI's argument that Code § 38.2-209 denies it the right to a jury trial under the Constitution of Virginia. Article I, Section 11 of the Constitution of Virginia provides "[t]hat in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." Yet, the right to a jury trial does not apply "to those proceedings in which there was no right to jury trial when the Constitution was adopted."
 
 Stanardsville Volunteer Fire Co. v. Berry,
 

 229 Va. 578
 
 , 583,
 
 331 S.E.2d 466
 
 , 469 (1985) (citing
 
 Bowman v. Virginia State Entomologist,
 

 128 Va. 351
 
 , 372,
 
 105 S.E. 141
 
 , 148 (1920) ).
 

 Code § 38.2-209(A) does not create an independent cause of action for an insurer's bad faith breach of an insurance contract.
 
 See
 
 Code § 38.2-209(B) ( "Nothing in this section shall be deemed to grant a right to bring an action against an insurer by an insured who would otherwise lack standing to bring an action.");
 
 see also
 
 1982 Acts ch. 576 (codified as former Code § 38.1-32.1). Thus, it is not a cause of action separate from REVI's claim for breach of contract, nor is it a codified version of the common law claim for bad faith.
 
 See
 

 CUNA Mut. Ins. Soc'y v. Norman,
 

 237 Va. 33
 
 , 38,
 
 375 S.E.2d 724
 
 , 726-27 (1989) ;
 
 State Farm Mut. Auto. Ins. Co. v. Floyd,
 

 235 Va. 136
 
 , 142,
 
 366 S.E.2d 93
 
 , 96 (1988). Rather, the section authorizes the court to award attorney's fees and costs after the insured establishes coverage under the disputed policy, and the court finds that the insurer denied coverage in bad faith. It is a vehicle for shifting attorney's fees and costs where otherwise such costs would not be recoverable.
 

 Virginia follows the "American Rule," which states that "[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant."
 
 Mullins v. Richlands Nat'l Bank,
 

 241 Va. 447
 
 , 449,
 
 403 S.E.2d 334
 
 , 335 (1991) (citations omitted). In Virginia, the right to recover attorney's fees and costs
 has been regulated by statute since the colonial era.
 
 [4]
 

 See
 
 1778 Acts ch. 14, § 5; 1764 Acts ch. 15,
 § 3; 1765 Acts ch. 52, § 3; 1761 Acts ch. 3, § 11;
 
 see also
 
 John Leubsdorf,
 
 Toward a History of the American Rule on Attorney Fee Recovery,
 

 47 Law & Contemp. Probs. 9
 
 , 10, 12 (1984).
 

 In 1761, the General Assembly enacted "An Act for Regulating the Practice of Attornies," prescribing the fees that an attorney could charge for his services. 1761 Acts ch. 3, § 11. Subsequently, the General Assembly authorized the clerks of court to tax the prescribed attorney's fee upon recovery in the bill of costs.
 
 See
 
 1778 Acts ch. 14, § 5; 1765 Acts ch. 52, § 3; 1764 Acts ch. 15, § 3;
 
 see also
 
 1745 Acts ch. 1, § 15 (directing the clerk of court to tax an attorney's fee in the bill of costs for certain actions). These acts demonstrate that when Article I, Section 11 was adopted, an attorney's fee award was a ministerial matter, closely regulated by the General Assembly, and not a question for the jury. Moreover, no provision or cause of action analogous to the fee-shifting provision of Code § 38.2-209(A) existed when the Constitution was adopted. Accordingly, Article I, Section 11 does not apply to proceedings under Code § 38.2-209(A). REVI has no right to a jury trial on the issue of bad faith or the corresponding award of attorney's fees and costs.
 

 III. CONCLUSION
 

 For these reasons, we conclude that the word "court," as used in Code § 38.2-209(A), means "judge." A judge, not a jury, must determine whether an insurer "has either denied coverage or failed or refused to make payment to the insured under the policy" in bad faith. We also conclude that Code § 38.2-209(A) does not implicate
 the right to a jury trial under Article I, Section 11 of the Constitution of Virginia. Therefore, we affirm the judgment of the circuit court.
 

 Affirmed.
 

 The only change in this statute from 1986 to the present was the addition of the word "fidelity" before "bond."
 
 See
 
 2006 Acts ch. 279.
 

 The General Assembly amended Code § 38.2-807 in 2010. However, none of the amendments are relevant to the determination of the meaning of the word "court" in Code § 38.2-209(A).
 
 See
 
 2010 Acts ch. 343.
 

 See
 
 Code § 38.2-807 (former Code § 38.1-70, enacted by 1952 Acts ch. 317 (distinguishing between "court" and "jury"));
 
 see also
 
 Code § 38.2-617(C) (former Code § 38.1-57.24(c), enacted by 1981 Acts ch. 389 (authorizing the "court" to "award the cost of the action and reasonable attorney's fees to the prevailing party")).
 

 In England, the common law did not expressly allow costs except by statute, the first of which was the Statute of Gloucester. 4 St. George Tucker, Blackstone's Commentaries with Notes of Reference to the Constitution and Laws of the Federal Government of the United States and of the Commonwealth of Virginia 399 (1803). Before the Statute of Gloucester, costs were "considered and included" in the damages, but the amounts were "frequently inadequate" to cover the plaintiff's expenses.
 

 Id.
 

 Following the enactment of the statute, Blackstone explains that "costs for the plaintiff are always entered on the roll as increase of damages by the court."
 

 Id.
 

 Even so, until 1797, "if a later statute provided that a fixed amount of damages should be recoverable for a new offence created by it," the plaintiff could not also recover costs unless the statute expressly provided for such costs. 4 W.S. Holdsworth, A History of English Law 537 (1924).