COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, AtLee and Senior Judge Clements
Argued at Lexington, Virginia


NATHAN OSBURN

v.      Record No. 0038-16-3

VIRGINIA DEPTARTMENT OF
 ALCOHOLIC BEVERAGE CONTROL

OPINION BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 15, 2016

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

Audra M. Dickens (Dale W. Webb; Frankl Miller & Webb, LLP, on
briefs), for appellant.

Ryan Spreague Hardy, Assistant Attorney General (Mark R. Herring,
Attorney General; Rhodes Ritenour, Deputy Attorney General; on
brief), for appellee.


Nathan Osburn ("Osburn") appeals the decision of the Roanoke City Circuit Court (the

"circuit court") upholding the previous decisions of a hearing officer, the Department of Human

Resource Management ("DHRM"), and the Department of Employee Dispute Resolution

("EDR"), terminating Osburn from his position as special agent for the Virginia Department of

Alcoholic Beverage Control ("ABC") because Osburn violated an ABC license applicant's

constitutional rights during a site inspection. Specifically, Osburn claims the circuit court erred

in finding that Osburn violated the Fourth Amendment and erred in holding the "newly

discovered evidence" of General Order 502 was collateral, corroborative, or cumulative.

I. BACKGROUND

Osburn was employed with ABC as a special agent who helped investigate applications

for retail alcohol licenses. In August 2013, ABC received an application from Linda Swim

("Swim"), owner of Bent Mountain Bistro (the "Bistro"). Another special agent, David Scott ("Agent Scott"), was assigned to review and investigate the application, however, Osburn assisted Agent Scott in doing so.

Although the application indicated that Swim was the sole owner of the Bistro, ABC's research into the company found that there was likely at least one other owner, Benjamin Ward ("Ward"), whom they suspected was a convicted felon. ABC issued subpoenas which "yielded good evidence" in regard to the undisclosed ownership. The record states that "Osburn had previously interacted with both Swim and Ward during [ABC] inspections of other establishments in which they were jointly involved." Further, Agent Scott received a phone call from the Bistro's landlord during which the landlord stated that the Bistro's owner was Ward. The landlord called back about twenty minutes later to state that Ward was in fact only a cook, and not an owner, of the Bistro. The agents also had a suspicion that there could be a third owner of the Bistro.

Agent Scott scheduled a site visit to the Bistro with Swim for August 9, 2013. Osburn accompanied Agent Scott on that visit to help investigate. According to Agent Scott, the purpose of the visit was "to conduct a site inspection as well as follow up on a suspicion that there may possibly be someone else involved with the business that had not been disclosed to [ABC] during the application investigation."

When they arrived, Agent Scott and Osburn entered the front door of the Bistro. Osburn went straight through to the kitchen to begin the site investigation. Agent Scott went to the back of the Bistro to speak with Ms. Swim. Neither Swim nor Osburn saw each other before Osburn began his site investigation. According to ABC's Operations Manual 03 ("OM-03") regarding retail investigations, the site inspection that was scheduled to occur on the date of Osburn's

search was "to ensure sufficient inventory of qualifying items." Va. Dep't of Alcoholic Beverage Control, Operations Manual 03, § III(A)(19) (2009) [OM-03].

Osburn began his investigation by walking around the kitchen and storage areas of the business, observing "the food, the equipment, the restaurant, facilities, the preparation area, the storage," including "entry points [and] exit points." This portion of the investigation took approximately ten minutes. Osburn then came upon the business office, which had an open door and many documents lying around as though it had not yet been set up. Osburn entered the business office, picked up multiple documents, took photographs of documents, and opened drawers and a filing cabinet during his investigation. Osburn continued looking "more closely" because he found a document indicating the owner of the Bistro to be Ward. Osburn stated that his search was "thorough" and that he "went through pretty much everything," but that he did not remove anything from the office.

At some point during his investigation, Osburn spoke with a man he called Dwayne Powell ("Powell") and introduced himself as an ABC agent. Osburn first stated that the conversation occurred while Powell was "at the pizza oven in the back," but later said that Powell was "outside, out back" of the Bistro. During the conversation, Osburn asked Powell such questions as how long Powell had worked there and whether he was on the payroll. Nothing in Osburn's testimony indicated that Powell knew Osburn was conducting a thorough search of the office.

Shortly after the site visit, Swim wrote a complaint to the Office of the Governor and to her representative in the House of Delegates alleging that both Agent Scott and Osburn violated her Fourth Amendment rights during the inspection. After learning of the complaints, ABC began an internal investigation. Only two of Swim's allegations were substantiated against Osburn: (1) "[Osburn] seized evidence in violation of Swim's constitutional rights," and

(2) "[Osburn] rummaged through Swim's business records with deliberate indifference to her rights."

On April 3, 2014, Osburn was terminated from employment with ABC and given a Group III Written Notice, which was issued for "Failure to Follow Instructions and/or Policy" (Offense Code 13) and "Other – Violation of Constitutional Rights" (Offense Code 99). In November 2014, an internal hearing officer upheld Osburn's termination. Osburn then appealed that decision to both DHRM and EDR. EDR remanded the case to the hearing officer for consideration of mitigating factors. On the second review, the hearing officer again upheld Osburn's termination, and Osburn again appealed to both DHRM and EDR. Both departments upheld the hearing officer's determination. Osburn then timely appealed those decisions to the circuit court, which upheld Osburn's termination.

Osburn now appeals the circuit court's decision, arguing that his search of the Bistro's business office did not require a warrant, and thus did not violate the Fourth Amendment because (i) it fell under the highly regulated industry exception to the warrant requirement, (ii) he had consent to search the premises, and (iii) the language of ABC's authorizing statute gives ABC the authority to conduct warrantless searches of both licensees and applicants. Osburn also argues that General Order 502, a policy enacted by ABC after Osburn's termination but before his evidentiary hearing, constitutes newly discovered evidence that would make his search permissible under ABC's revised policy.

## II. ANALYSIS

In reviewing the ruling of a grievance proceeding, this Court may "reverse or modify the hearing officer's decision" only if "the determination is contradictory to law." Va. Dep't of State Police v. Barton, 39 Va. App. 439, 445, 573 S.E.2d 319, 322 (2002); see also Code § 2.2-3005(B). Both circuit courts and appellate courts are to apply this standard of review. See

- 4 -

Pound v. Dep't of Game & Inland Fisheries, 40 Va. App. 59, 64, 577 S.E.2d 533, 535 (2003). "[T]he hearing officer is to act as fact finder and the Director of the [DHRM] is to determine whether the hearing officer's decision is consistent with policy. In the grievance process, neither of these determinations is subject to judicial review, but only that part of the grievance determination 'contradictory to law.'" Barton, 39 Va. App. at 445, 573 S.E.2d at 322 (quoting Code § 2.1-116.07:1(B)). The appealing party has the burden to "identify[] the law . . . contradicted" by the hearing officer's decision. Va. Polytechnic Inst. & State Univ. v. Quesenberry, 277 Va. 420, 429, 674 S.E.2d 854, 858 (2009). Questions of law raised by the parties in such cases are "limited to 'constitutional provisions, statutes, regulations, [and] judicial decisions'" and are reviewed *de novo*. Commonwealth v. Needham, 55 Va. App. 316, 325, 685 S.E.2d 857, 861 (2009). However, the Director of DHRM has "the final authority to establish and interpret personnel policies." Code § 2.2-1201(13).

As a preliminary matter, we review ABC's contention that this Court need not analyze the Fourth Amendment issue because Osburn was terminated for both a violation of the Fourth Amendment as well as violation of ABC policy, and agency policy is not subject to judicial review. However, the policies referenced in Osburn's notice of termination are directly related to, and dependent upon, the Fourth Amendment rights of ABC applicants and licensees, and thus, to allow the termination to depend upon the agency policy alone would amount to allowing an agency official to interpret and define the limits of the Fourth Amendment. Therefore, we review Osburn's assignments of error regarding both ABC's policy and the jurisprudence interpreting the Fourth Amendment.

## A. Fourth Amendment Violation

Osburn's first assignment of error argues that the circuit court erred in ruling that Osburn violated the Fourth Amendment. It asserts that his search of the business office did not require a

warrant because (i) the search fell within the "highly regulated industry exception," (ii) he had consent from either Swim or Powell to conduct the search, and (iii) the language of ABC's authorizing statute gives ABC the authority to conduct warrantless searches of both licensees and applicants.

"[T]he Fourth Amendment protects businesses from unreasonable warrantless searches and seizures by administrative agencies." Abateco Servs. v. Bell, 23 Va. App. 504, 511-12, 477 S.E.2d 795, 798 (1996). "Search regimes where no warrant is ever required may be reasonable where 'special needs . . . make the warrant and probable-cause requirement impracticable.'" City of L.A. v. Patel, 135 S. Ct. 2443, 2452 (2015) (quoting Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 619 (1989)). A search that "serve[s] a 'special need' other than conducting criminal investigations" is referred to as an "administrative search." Id. The Supreme Court of the United States has long held "that administrative searches must be viewed differently than criminal searches, and that their constitutionality must be tested by different standards." United States v. Thriftimart, Inc., 429 F.2d 1006, 1008 (9th Cir. 1970) (referencing two Supreme Court cases, Camara v. Municipal Court, 387 U.S. 523 (1967), and See v. Seattle, 387 U.S. 541 (1967), for support).

### i.  Highly Regulated Industry Exception

Osburn first argues that his search of the Bistro's business office did not violate Swim's Fourth Amendment rights because the search was related to the regulation of alcohol, which falls under the highly regulated industry exception.

An exception to the warrant requirement exists for "searches of closely regulated businesses and industries . . . because 'certain industries have such a history of government oversight that no reasonable expectation of privacy could exist.'" Abateco Servs., 23 Va. App. at 512, 477 S.E.2d at 799 (quoting Marshall v. Barlow's, Inc., 436 U.S 307, 312 (1978)). The

liquor industry falls within the highly regulated industry exception to the warrant requirement.

See Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970).  "[W]hen an entrepreneur

embarks upon such a business [as the sale of liquor], he has voluntarily chosen to subject himself

to a full arsenal of governmental regulation."  Marshall, 436 U.S. at 313.

The legality of a search of highly regulated industry "depends not on consent but on the

authority of a valid statute."  United States v. Biswell, 406 U.S. 311, 315 (1972).  In this case,

the statute at issue is Code § 4.1-204(F), which states:

> [ABC] and its special agents shall be allowed free access during
> reasonable hours to every place in the Commonwealth and to the
> premises of both (i) every wine shipper licensee and beer shipper
> licensee and (ii) every delivery permittee wherever located where
> alcoholic beverages are manufactured, bottled, stored, offered for
> sale or sold, for the purpose of examining and inspecting such
> place and all records, invoices and accounts therein.  The Board
> may engage the services of alcoholic beverage control authorities
> in any state to assist with the inspection of the premises of a wine
> shipper licensee, a beer shipper licensee, or delivery permittee, *or
> any applicant* for such license or permit.

(Emphasis added).

Since Swim was not yet licensed to sell alcohol, but was only in the application process,

the issue is whether the statute, and thus the highly regulated industry exception to the warrant

requirement, applies to ABC licensees only, or to both licensees and applicants for a license.

Osburn contends that the statute gives ABC agents "free access" to both licensees and applicants

for a license to sell alcohol, such that the search he conducted was authorized by the statute.

ABC contends that the statute only allows ABC agents "free access" to licensees, and thus

Osburn's conduct did not fall within the exception.

However, neither party has an accurate understanding of the statute.  Contrary to the

arguments of both Osburn and ABC, Code § 4.1-204(F) does not provide ABC agents with "free

access" at all, but rather the statute places the burden on both licensees and applicants for a

license to provide such access. The statute states that ABC "agents *shall be allowed* free access," indicating that it is the applicant or licensee who must allow the agent access, not the other way around. Therefore, in order to obtain or retain an ABC license, Code § 4.1-402(F) directs a license applicant to allow ABC agents "free access" to his or her premises, essentially requiring a case-by-case waiver of his or her Fourth Amendment rights in order to become licensed or to retain a license. The statute does not give ABC agents the right to raid with impunity the records and businesses of either applicants or licensees.

Thus, since Code § 4.1-402(F) applies to both ABC licensees and to applicants for a license, we must determine whether Osburn's conduct fell within the highly regulated industry exception to the warrant requirement. In New York v. Burger, 482 U.S. 691, 702-03 (1987) (quoting Donovan v. Dewey, 452 U.S. 594, 600, 603 (1980)), the Supreme Court of the United States provided a three-prong test to determine whether a warrantless inspection is reasonable in the context of a highly regulated business:

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. . . . Second, the warrantless inspections must be "necessary to further the regulatory scheme". . . . Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

In the case of the alcohol industry, the government obviously has a substantial interest in knowing the ownership of businesses applying for an ABC license. Such interest is "substantial" because knowing all owners of a business helps ensure compliance with industry regulations and that illegal operations will not occur with the use of an ABC license. See United States v. Brown, 763 F.2d 984, 987 (8th Cir.) ("The government has a substantial interest in establishing

methods by which it can effectively monitor compliance with the regulations governing the Medicaid Program and root out opportunities for and instances of fraud."), cert. denied, 474 U.S. 905 (1985). Thus, the facts of this case pass the first prong of the Burger test. Further, Osburn's thorough search of the Bistro's business office was specifically due to ABC's suspicions of undisclosed ownership of the company. Therefore, this case passes the second prong of the test because an inspection of business records is "necessary to further the regulatory scheme" of determining all business owners. See Burger, 482 U.S. at 702.

However, Osburn's search of the Bistro's business office may fail the third prong of the Burger test. Since the statute requires applicants to essentially consent to a search by allowing "free access," to ABC agents, the statute only "provide[s] a constitutionally adequate substitute for a warrant" in the form of the applicant's own consent to the search. The statute provides no other "substitute for a warrant" aside from the applicant's consent. Therefore, under the statutory scheme, ABC agents must either obtain an inspection warrant or obtain the consent of an applicant or licensee to search the premises. Since no warrant was obtained in this case, the remaining question is whether consent was given. If no valid consent was given, Osburn's search fails the third prong of the Burger test and Osburn's search would not fall within the highly regulated industry exception to the warrant requirement.

ii. Consent

Osburn contends that he obtained both express and implied consent to search the Bistro office. He argues that express consent was given when Swim made an appointment for the ABC agents to come to the office and because she had applied for multiple ABC licenses in the past, and therefore should have known that a search would be conducted. Osburn also argues that he had implied consent because Powell, whom Osburn contends was part owner of the Bistro, was watching without objection while Osburn conducted part of the search.

- 9 -

Whether a person consented to a warrantless search is a question of fact. Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989). Questions of fact are not reviewable by appellate courts in the grievance process unless the finding was contradictory to law. Barton, 39 Va. App. at 445, 573 S.E.2d at 322.[1] "We are bound by the [agency's] findings of historical fact unless plainly wrong or without evidence to support them." Edwards v. Commonwealth, 38 Va. App. 823, 827, 568 S.E.2d 454, 456 (2002) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)). However, we review *de novo* whether the legal standards of consent were properly applied by the circuit court. See Medley v. Commonwealth, 44 Va. App. 19, 29, 602 S.E.2d 411, 415 (2004) ("[W]e review *de novo* the [circuit] court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.").

"Where consent is freely and voluntarily given, probable cause and a search warrant are not required." Limonja, 8 Va. App. at 540, 383 S.E.2d at 481. "A consensual search is reasonable if the search is within the scope of the consent given." Edwards, 38 Va. App. at 827, 568 S.E.2d at 456 (quoting Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992)). "The United States Supreme Court has articulated the standard for measuring the scope of an individual's consent under the Fourth Amendment to be ""'objective' reasonableness—what would the typical person have understood by the exchange between the officer and the suspect?'" Id. at 827-28, 568 S.E.2d at 456 (quoting Florida v. Jimeno, 500 U.S. 248, 251 (1991)).

---

[1]     [T]he hearing officer is to act as fact finder and the Director of the [DHRM] is to determine whether the hearing officer's decision is consistent with policy. In the grievance process, neither of these determinations is subject to judicial review, but only that part of the grievance determination "contradictory to law."

Barton, 39 Va. App. at 445, 573 S.E.2d at 322.

In this case, the hearing officer determined that the evidence was insufficient to find that Osburn had either express or implied consent to search the Bistro's business office. The circuit court agreed that the evidence in the record supported that factual conclusion as a matter of law. We agree as well. According to ABC's operations manual in effect at the time of Osburn's search, the scope of a search pursuant to a "site visit" is narrow: "to ensure sufficient inventory of qualifying items." OM-03 § III(A)(19) (2009). Thus, based on a plain reading of ABC's operations manual, a "site visit" should entail nothing more than a search of the kitchen area of a business to determine whether the required inventory is present.

Based on the "objective reasonableness" standard of Jimeno and Edwards, a typical person in Swim's position would not have understood the scheduled visit to entail more than a kitchen inspection and certainly not a search of her office and its contents. The evidence in the light most favorable to ABC, as the party that prevailed below, indicates that Swim's previous dealings with ABC, assuming such dealings included site visits, would not have alerted Swim to anything more than a brief inspection of the kitchen for qualifying inventory. Further, there is no evidence to indicate that Swim knew the appointment she set up with Agent Scott was for anything more than a typical site visit and interview. For these reasons, it is clear that an applicant in Swim's position would have believed the scope of their consent to be limited to a site visit search of the kitchen—and other areas where alcohol would be kept and served—and no more. However, Osburn's search was not so limited, as he went into the business office specifically searching for records indicating ownership of the business. He searched through desk drawers and a filing cabinet, and even took pictures of documents pertaining to ownership of the Bistro. ABC could fairly conclude that such a search exceeded the scope of consent for a site visit because Osburn clearly did not limit the scope of his search to the locations pertinent to the storing and serving of food and alcoholic beverages.

- 11 -

Osburn also contends that implied consent was formed when Powell, an alleged part-owner of the Bistro, did not object while Osburn was conducting his search. However, Osburn's evidence in support of that position consisted of his own conflicting statements about his interactions with Powell on the day of the search. There was no other supporting evidence presented to the hearing officer. As fact finder, it was in the hearing officer's discretion to determine the credibility of the evidence. See Sierra v. Commonwealth, 59 Va. App. 770, 776, 722 S.E.2d 656, 658 (2012) ("It is the prerogative of the trier of fact 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" (quoting Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010))). The hearing officer implicitly determined, based on the evidence before him, that either Osborn's testimony was not credible or that the evidence was insufficient to support a finding of implied consent to search the Bistro office. Because there is evidence in the record to support the hearing officer's finding, we hold that the circuit court was correct in declining to overturn the hearing officer's decision in that regard.

For the above reasons, we conclude that ABC and the circuit court did not err in their judgment that Osburn did not have consent of any kind to conduct a search of the Bistro business office.

### iii. Whether the Statutory Definition of "Place or Premises" Permits Free Access

Next, Osburn contends the circuit court erred in its review of ABC's statutory construction of Code § 4.1-402(F) in light of the statute's definitions section, Code § 4.1-100. Specifically, Osburn argues that the Code's definition of "place or premises," permits ABC agents the "free access" of Code § 4.1-402(F) to search the property of both ABC applicants and licensees. However, we have already decided in Part II(A)(i) above that Code § 4.1-402(F) does not convey a right of "free access" to ABC agents, but rather places the burden on ABC

applicants and licensees to permit "free access" to ABC agents when conducting site inspections upon pain of adverse consequences to their application or license. Therefore, our judgment in that regard also resolves Osburn's contention here.

Therefore, since Osburn's search did not fall within the highly regulated industry exception and he did not have consent to search the business office, we hold that the circuit court did not err in upholding Osburn's termination because Osburn's search of the Bistro office violated the Fourth Amendment in contravention of ABC policy.

### B.  Newly Discovered Evidence

Osburn's second assignment of error alleges that the circuit court erred in holding the newly discovered evidence of General Order 502 was collateral, corroborative, or cumulative. General Order 502 became effective in July 2014 and specifically addressed the handling and investigation of ABC applications. Va. Dep't of Alcoholic Beverage Control, General Order 502, § I (2014). Specifically, Osburn contends that General Order 502, adopted after his termination, changed the standard policies of a site visit as delineated in OM-03 and that the change specifically allowed Osburn's conduct.

First, we note that the newly discovered evidence rule does not apply to a newly enacted law, agency policy, or order such as General Order 502. According to Black's Law Dictionary, "evidence" is defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." Evidence, Black's Law Dictionary (10th ed. 2014). General Order 502 is meant to guide ABC agents in the process of their site inspections; it does nothing to help "prove or disprove" any fact. Thus, General Order 502 does not fall within the range of information this Court could consider under the newly discovered evidence rule.

- 13 -

Further, whether termination or other disciplinary action is warranted for violation of departmental policy is ordinarily governed by the policies in place at the time of the termination or other disciplinary action. Moreover, even if we could consider General Order 502, we nonetheless could not review EDR's decision that it did not constitute newly discovered evidence. The standard for determining whether newly discovered evidence should be considered in employee grievance proceedings is unique because administrative agencies have their own policies that are not subject to judicial review. "These decisions, which were rendered on administrative review to determine whether the hearing officer's decision is consistent with state or agency policy and whether it complies with the grievance procedure, are final and not appealable." Tatum v. Va. Dep't of Agric. & Consumer Servs., 41 Va. App. 110, 118, 582 S.E.2d 452, 456 (2003). Section 7.2(a) of the Grievance Procedure Manual states that a "challenge that the hearing decision is not in compliance with the grievance procedure . . . *as well as a request to present newly discovered evidence*, is made to EDR." Grievance Proc. Manual § 7.2(a) (emphasis added). In this case, Osburn already made a request to EDR to consider newly discovered evidence, and EDR already made its decision in that regard. Because EDR's decision was based on agency policy and the grievance procedure, the decision is final and not appealable. Thus, we do not review Osborn's assignment of error regarding newly discovered evidence.

## III. CONCLUSION

We hold that the circuit court did not err in finding that Osburn violated the Fourth Amendment. Although the search in this case was initially within the "highly regulated industry exception" because it was related to the alcohol industry, Osburn's search *of the business office* took the search outside the realm of the exception because he did not obtain consent from the business owner to enter the office and search business documents. Specifically, Osburn's search

of the business office fell outside the scope of the consent that the owner did give to search the kitchen for proper inventory pursuant to the site inspection.  Further, General Order 502 is not reviewable as newly discovered evidence, because that determination is an agency decision not subject to judicial review.  For all of these reasons, we affirm the decision of the circuit court.

Affirmed.