PRESENT: All the Justices

NATHAN OSBURN

v.  Record No. 161777

VIRGINIA DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
February 22, 2018

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal from a state employee grievance proceeding, we consider whether a

hearing officer's decision upholding the termination of a special agent with the Virginia

Department of Alcoholic Beverage Control ("ABC") was contrary to law.

I.  Facts and Proceedings

Linda K. Swim ("Swim") submitted an application to ABC requesting a retail alcohol

license for a restaurant known as the Bent Mountain Bistro ("Bistro").  ABC special agent David

C. Scott ("Scott") was assigned to review and investigate the application, and special agent

Nathan L. Osburn ("Osburn") assisted Scott.

Upon review of the application, Scott and Osburn developed questions regarding

ownership of the Bistro.  Although the application stated that Swim was the sole owner, Scott

and Osburn were concerned that a man named Benjamin Ward ("Ward") was an undisclosed co-

owner.  This concern merited further investigation because, if true, Ward's undisclosed

ownership was a potential ground for ABC to deny the pending application.[*]

Scott scheduled a meeting with Swim and a site visit of the Bistro for August 9, 2013.  At

that time, ABC's Operations Manual 03 ("operations manual") instructed ABC agents to

_____

[*] Pursuant to Code § 4.1-222, "[ABC] may refuse to grant any license if it has reasonable cause to believe that . . . [any] shareholder owning 10 percent or more of [a corporate applicant's] capital stock . . . [h]as misrepresented a material fact in applying to [ABC] for a license."  Code § 4.1-222(A)(1)(l).

"conduct a site visit to ensure sufficient inventory of qualifying items" before issuing a license. Va. Dep't of Alcoholic Beverage Control, Operations Manual 03, § III(A)(19)(2009).

When they arrived for the scheduled site visit, Scott and Osburn entered the Bistro through the front door. Scott then remained in the dining area and spoke with Swim while Osburn proceeded to the kitchen. There, Osburn conducted an inspection to ensure that the Bistro was a functional and fully stocked restaurant, as required by ABC regulations.

After inspecting the kitchen, Osburn walked through an open door into a business office in the back of the Bistro. Once inside, Osburn searched the office. He opened desk drawers and a filing cabinet, and photographed various documents uncovered in the process. One of those documents indicated that Ward was the owner of the Bistro. Osburn did not ask for permission to enter the office, and he did not encounter anyone while conducting his search.

Swim's application was not approved and, in October 2013, she sent complaints to the Office of the Governor and various members of the General Assembly. Swim's complaints asserted that Osburn and Scott engaged in "professional misconduct" during the site visit. Among other things, Swim alleged that Osburn "rummage[ed] through [her] business records with deliberate indifference to [her] rights" and "seiz[ed] evidence in violation of [her Fourth Amendment] rights."

ABC conducted an internal investigation and, on April 3, 2014, issued a "Group III" Written Notice ("Notice") terminating Osburn's employment. The Notice stated that Osburn's conduct during the site visit was "contrary to general order/policy" and "constitute[d] an egregious violation of [Swim's] Fourth Amendment [rights]."

Osburn filed a grievance challenging his termination and, pursuant to Code § 2.2-3000 *et seq.*, requested a hearing before a hearing officer appointed by the Virginia Department of

2

Human Resources Management ("DHRM"). A two-day hearing ensued, where Osburn argued that the office search was permissible under the highly regulated industry exception to the warrant requirement because it was authorized by Code § 4.1-204(F), which states that ABC agents "shall be allowed free access" to certain places within the Commonwealth. Alternatively, Osburn argued that he had consent, express or implied, to conduct the search.

During the hearing, ABC countered that "[Osburn's] entry into the office as part of an applicant investigation . . . [was] not covered under the general inspection provisions as it would be for a [licensee]." ABC asserted that "a site visit of [an applicant] . . . has never risen to the level of an inspection of a licensed premise for which there is statutory and regulatory authority." In addition, ABC presented testimony that "it has not instructed, trained, or permitted its agents to conduct warrantless, non-consensual searches of license applicants or their facilities."

After considering the arguments and evidence, the hearing officer upheld Osburn's termination. The hearing officer determined that the warrantless search was not permissible under the highly regulated industry exception because "[t]here is no statutory or regulatory provision that an applicant automatically forfeits [F]ourth [A]mendment rights by merely applying for a license." In addition, the hearing officer found that there was "insufficient evidence that [Swim] or anyone else gave consent, expressed or implied, [for] [Osburn's] search of the office." Accordingly, the hearing officer concluded that "termination was warranted and appropriate under the circumstances" because Osburn's "failure to follow instructions and/or policy" during the site visit resulted in the violation of Swim's constitutional rights.

Osburn appealed the hearing officer's decision to both DHRM and the Department of Employee Dispute Resolution ("EDR"). EDR initially remanded the case to the hearing officer for consideration of mitigating factors, but the hearing officer once again upheld Osburn's

3

termination. Osburn then appealed that decision to DHRM and EDR, but neither department

disturbed the hearing officer's second determination.

Osburn filed an appeal in the Circuit Court for the City of Roanoke ("circuit court"),

arguing that the hearing officer's determination that he violated the Fourth Amendment was

contrary to law. Osburn maintained that the office search was permissible under the highly

regulated industry exception because the search was authorized by Code § 4.1-204(F). The

circuit court rejected Osburn's argument and held that Code § 4.1-204(F) only authorizes ABC

agents to inspect the premises of licensed businesses, and not applicants.

Osburn appealed the circuit court's judgment to the Court of Appeals, again arguing that

he did not violate the Fourth Amendment because the office search was authorized by

Code § 4.1-204(F). ABC responded, consistent with the circuit court's ruling, that the search

was unlawful because Code § 4.1-204(F) only authorizes ABC agents to inspect the premises of

licensees. The Court of Appeals rejected both arguments, holding:

> Contrary to the arguments of both Osburn and ABC, Code § 4.1-204(F) does not provide ABC agents with "free access" at all, but rather the statute places the burden on both licensees and applicants for a license to provide such access. The statute states that ABC "agents *shall be allowed* free access," indicating that it is the applicant or licensee who must allow the agent access, not the other way around. Therefore, in order to obtain or retain an ABC license, [Code § 4.1-204(F)] directs a license applicant to allow ABC agents "free access" to his or her premises, essentially requiring a case-by-case waiver of his or her Fourth Amendment rights in order to become licensed or to retain a license.

*Osburn v. Virginia Dept. of Alcoholic Bev. Contr.*, 67 Va. App. 1, 13, 792 S.E.2d 276, 282

(2016) (emphasis in original). Based on this interpretation, the Court of Appeals held that the

statute applies to applicants as well as licensees and that Osburn's search of the Bistro office did

not fall within the highly regulated industry exception because the evidence supported the

4

hearing officer's finding that he lacked consent. *Id*. at 15-18, 792 S.E. 2d at 283-85.

Accordingly, the Court of Appeals affirmed the circuit court's determination that Osburn

violated the Fourth Amendment. *Id*. at 20, 792 S.E.2d at 286.

Osburn appealed to this Court, and we awarded an appeal on the following assignment of

error:

> The Court of Appeals erred by affirming the trial court's ruling
> upholding Nathan Osburn's termination from employment with
> Defendant Virginia Department of Alcoholic Beverage Control
> ("ABC") on the ground that Osburn's conduct as an ABC special
> agent violated the Fourth Amendment.
>
> a. The Court of Appeals misinterpreted the controlling statute,
>    Virginia Code § 4.1-204(F).
>
> b. Under the Court of Appeals' interpretation of Virginia
>    Code § 4.1-204(F), ABC applicants and licensees would have
>    the same status. ABC conceded to the hearing officer and in
>    the trial court that if licensees and applicants had the same
>    status under the statute, then Osburn's conduct did not violate
>    the Fourth Amendment.
>
> c. The Court of Appeals erroneously held that Osburn's conduct
>    did not fall within the "highly regulated industry" exception to
>    the Fourth Amendment's warrant requirement.

## II.  Analysis

### A.  Standard of Review

On appeal from a state employee grievance decision, courts are bound by the factual

findings of the hearing officer and may only reverse or modify the decision if it is "contradictory

to law." *Virginia Polytechnic Inst. & State Univ. v. Quesenberry*, 277 Va. 420, 429, 674 S.E.2d

854, 858 (2009).  "The appealing party must 'identify [a] constitutional provision, statute,

regulation or judicial decision which the [hearing officer's] decision contradicted.'" *Id*.  (quoting

*Tatum v. Virginia Dept. of Agric.*, 41 Va. App. 110, 122, 582 S.E.2d 452, 458 (2003)).

5

Questions regarding whether a decision is contradictory to law, including the meaning of any underlying statutes, are reviewed de novo. *See id.*; *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 208, 776 S.E.2d 808, 810 (2015).

### B. The Highly Regulated Industry Exception

"[T]he Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 482 U.S. 691, 699 (1987). Warrantless searches, in either context, are presumptively unreasonable. *City of L.A. v. Patel*, 135 S. Ct. 2443, 2452 (2015). There is an exception, however, for warrantless inspections of businesses engaged in highly regulated industries. *Id.* at 2454-56; *Burger*, 482 U.S. at 702.

The highly regulated industry exception is premised upon the concept that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (internal citation omitted) (noting that liquor and firearms businesses are in this category). Consequently, "when an entrepreneur embarks upon such a business, he [] voluntarily [chooses] to subject himself to a full arsenal of governmental regulation." *Id.* In this context, "where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Burger*, 482 U.S. at 702.

To be "reasonable," a warrantless inspection of a highly regulated business must be authorized by statute. *See United States v. Biswell*, 406 U.S. 311, 315 (1972) (noting "the legality of the search depends not on consent but on the authority of a valid statute"). Here, a

6

preliminary issue is whether Osburn's warrantless inspection of the Bistro office was authorized by Code § 4.1-204(F). That statute states, in pertinent part:

> [ABC] and its special agents shall be allowed free access during reasonable hours to every place in the Commonwealth and to the premises of both (i) every wine shipper licensee and beer shipper licensee and (ii) every delivery permittee wherever located where alcoholic beverages are manufactured, bottled, stored, offered for sale or sold, for the purpose of examining and inspecting such place and all records, invoices and accounts therein.

Code § 4.1-204(F).

### C. Code § 4.1-204(F) does not extend to applicants

Osburn argues that his warrantless inspection of the Bistro office was permissible under the highly regulated industry exception because Code § 4.1-204(F) authorizes ABC agents to inspect the premises of both applicants and licensees. We disagree.

As written, Code § 4.1-204(F) extends only to licensees. The plain language of the statute grants ABC agents the authority to inspect premises "where alcoholic beverages are manufactured, bottled, stored, offered for sale or sold." Code § 4.1-204(F). These activities presuppose licensure, as only a licensee may lawfully manufacture, bottle, store, offer for sale or sell alcoholic beverages. Therefore, prior to licensure, applicants seeking an ABC license are not subject to the warrantless searches anticipated by Code § 4.1-204(F).

Code § 4.1-331 reinforces the limited scope of Code § 4.1-204(F). That statute states that "[n]o *licensee* shall fail or refuse to . . . allow [his] records, invoices and accounts or his place of business to be examined and inspected in accordance with [Code] § 4.1-204." Code § 4.1-331 (emphasis added). To construe Code § 4.1-204(F) more broadly than Code § 4.1-331 would create unnecessary tension between two related statutes. Our aim is instead to "construe 'all statutes *in pari materia* in such a manner as to reconcile, if possible, any discordant feature

7

which may exist, and make the body of the laws harmonious.'" *REVI*, 290 Va. at 211, 776 S.E.2d at 812. Applied here, we conclude that the scope of Code § 4.1-204(F), like that of Code § 4.1-331, extends only to licensees.

Osburn urges a broader interpretation by relying on the definition of the term "place" found in Code § 4.1-100. That statute defines "place" as

> the real estate, together with any buildings or other improvements thereon, designated in the application for a license as the place at which the manufacture, bottling, distribution, use or sale of alcoholic beverages shall be performed.

Code § 4.1-100. Because Code § 4.1-204(F) grants ABC agents "free access . . . to every *place* in the Commonwealth" where certain activities occur, Osburn argues that Code §§ 4.1-100 and -204(F) together authorize ABC agents to inspect any real estate designated in an application as the place where alcohol will be sold. According to Osburn, this means that Code § 4.1-204(F) authorizes ABC agents to inspect the premises of both applicants and licensees.

Osburn's interpretation is flawed because the definition of "place" in Code § 4.1-100 does not expand the scope of Code § 4.1-204(F). On its face, Code § 4.1-204(F) applies only to licensees. Code § 4.1-100 then defines where an inspection may take place, but not who may be subject to the inspection. Therefore, read together, Code §§ 4.1-100 and -204(F) authorize warrantless inspections of the premises of licensees, including any location "designated in the application for a license as the place at which the . . . sale of alcoholic beverages shall be performed." But prior to licensure, Code § 4.1-204(F) does not authorize warrantless inspections of the premises of applicants.

In reaching this conclusion, we are mindful of the constitutional concerns that a broader interpretation of Code § 4.1-204(F) would inevitably produce. This case, however, does not require us to consider whether the Fourth Amendment tolerates warrantless inspections of

8

applicants seeking to enter a highly regulated industry. Because the plain language of Code § 4.1-204(F) applies only to licensees, not applicants, our resolution avoids any potential issues of constitutional infirmity. *See Virginia Soc'y for Human Life v. Caldwell*, 256 Va. 151, 157, 500 S.E.2d 814, 816 (1998) ("[A] statute will be construed in such a manner as to avoid a constitutional question wherever this is possible." (quoting *Eaton v. Davis*, 176 Va. 330, 339, 10 S.E.2d 893, 897 (1940))).

D. Swim did not consent to Osburn's warrantless search of the Bistro office

Osburn alternatively argues that he did not violate Swim's Fourth Amendment rights because she consented to the warrantless search of the Bistro office by virtue of voluntarily scheduling the site visit. We disagree.

Whether a person has consented to a warrantless search "is a factual question best answered by the . . . factfinder." *Evans v. Commonwealth*, 290 Va. 277, 283 n.4, 776 S.E.2d 760, 762 n.4 (2015) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Pursuant to Virginia's statutory grievance procedure, findings of fact are to be made by the hearing officer. Code § 2.2-3005.1; *see Quesenberry*, 277 Va. at 430, 674 S.E.2d at 859. Those factual findings are binding on appeal, where judicial review is limited to whether the grievance determination itself is "contradictory to law." Code § 2.2-3006(B); *see Andrews v. Richmond Redevelopment & Hous. Auth.*, 292 Va. 79, 88-89, 787 S.E.2d 96, 101-02 (2016).

The hearing officer in this case found, as a matter of fact, that "[t]here [was] insufficient evidence that [Swim] . . . gave consent, expressed or implied, to [Osburn's] search of the [Bistro] office." That factual finding is supported by the record, which indicates that Osburn neither requested nor received permission to enter, much less search, the Bistro office. Indeed, after

9

considering the record, the hearing officer determined that "there [was] no evidence [Swim] . . . was even aware that [Osburn] had entered the office and/or was searching [it]."

### III.  Conclusion

For the reasons stated, we will affirm the Court of Appeals' judgment upholding the hearing officer's determination that Osburn violated Swim's constitutional rights, the effect of which is to affirm the circuit court's affirmance of the hearing officer's decision to uphold Osburn's termination.  However, we will vacate the opinion of the Court of Appeals.

*Judgment affirmed, opinion vacated.*