PRESENT:  Goodwyn, C.J., Kelsey, McCullough, Chafin, Russell, and Mann, JJ., and Mims, S.J.

ANTOINE ANDERSON

v.  Record No. 230172

OPINION BY
JUSTICE WESLEY G. RUSSELL, JR.
OCTOBER 12, 2023

HAROLD CLARKE, IN HIS OFFICIAL
CAPACITY AS DIRECTOR OF THE
VIRGINIA DEPARTMENT OF
CORRECTIONS, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Antoine Anderson appeals the judgment of the circuit court denying his petition for a writ of habeas corpus.  In his petition, he claims that the Virginia Department of Corrections ("VDOC") failed to timely release him from prison because it undercalculated his earned sentence credits ("ESCs").  Specifically, Anderson contends that he was entitled to "enhanced" ESCs pursuant to amendments to Code § 53.1-202.3 adopted by the General Assembly in 2020.  He asserts that, in interpreting the 2020 amendments and the effect of language addressing those amendments that was included in the General Assembly's 2022 Appropriation Act, the circuit court erred in concluding that he was not entitled to immediate release.  For the reasons that follow, we affirm the judgment of the circuit court.

I.  Background

Anderson is currently incarcerated at the Coffeewood Correctional Center in Mitchells, Virginia, serving 13 years for state offenses he committed while he was detained on federal drug charges in 2004.  His state sentences include one year for attempted escape, five years for abduction, two years for assault on a law enforcement officer, and five years for a second assault on a law enforcement officer.

After serving his sentence for the federal drug conviction, Anderson was transferred to VDOC custody on January 18, 2013, to begin serving his state sentences. Pursuant to Code § 53.1-202.2, he entered Virginia's statutorily constructed ESC system, which is designed to incentivize good behavior and rehabilitation among inmates by awarding ESCs to inmates who demonstrate positive conduct. Each ESC an inmate accrues deducts "one day from a person's term of incarceration." Code § 53.1-202.2(A).

Under the ESC scheme that existed when Anderson was sentenced for his state convictions, an inmate could earn up to 4.5 ESCs for every 30 days served, depending on his or her "classification level" as designated by VDOC. To determine appropriate classification levels, VDOC periodically evaluated each inmate, considering things like disciplinary infractions incurred, employment, and participation in rehabilitative programs. For each 30 days served, Level I inmates could earn the maximum available 4.5 ESCs, Level II inmates could earn 3 ESCs, Level III inmates could earn 1.5 ESCs, and Level IV inmates could earn 0 ESCs.

In 2020, the General Assembly passed, and the Governor signed, House Bill 5148 ("HB 5148"), amending Code § 53.1-202.3. *See* 2020 Acts ch. 50 (Spec. Sess. I). The amendments created statutory classification levels for inmates in the ESC program, increased the number of credits available up to a maximum of 15 ESCs per 30 days served for Level I inmates, and delineated certain offenses that would not be eligible for the enhanced credits under the new system, but rather, would be subject to a maximum of 4.5 ESCs per 30 days served. *Id.*

In addition to amending the existing provisions of Code § 53.1-202.3 to create the new ESC system, HB 5148 contained multiple enactment clauses. The second enactment clause directed that VDOC "convene a work group" to include "representatives of the Senate Committee on Finance and Appropriations, the House Committee on Appropriations, the

Virginia State Crime Commission, and any other stakeholders [VDOC] deems appropriate." *Id.* The work group was charged with studying the effects of the implementation of the new ESC system and was directed to file reports with the General Assembly and the Governor with an initial report being due on July 1, 2021, and another report being due on June 1, 2023. *Id.*

In another enactment clause, the General Assembly evinced its intention that, once the program began, the enhanced maximum ESCs that could be earned would apply retroactively over an inmate's entire period of incarceration and would not be limited to periods of incarceration occurring after the effective date of the new system. Specifically, the enactment clause provides

> [t]hat the provisions of § 53.1-202.3 of the Code of Virginia, as amended by this act, shall apply retroactively to the entire sentence of any person who is confined in a state correctional facility and participating in the earned sentence credit system on July 1, 2022. If it is determined that, upon retroactive application of the provisions of § 53.1-202.3 of the Code of Virginia, as amended by this act, the release date of any such person passed prior to the effective date of this act, the person shall be released upon approval of an appropriate release plan and within 60 days of such determination unless otherwise mandated by court order; however, no person shall have a claim for wrongful incarceration pursuant to § 8.01-195.11 of the Code of Virginia on the basis of such retroactive application. If a person is released prior to completion of any reentry programs deemed necessary by the Department of Corrections on the person's most recent annual review or prior to completion of any programs mandated by court order, the person shall be required to complete such programs under probation, provided probation is mandated by the court and current community resources are sufficient to facilitate completion of the aforementioned programs.

*Id.*

Absent additional action by the General Assembly, HB 5148 would have become effective four months after the adjournment of the special session at which it was adopted. *See* Code § 1-214(B) ("All laws enacted at a special session of the General Assembly . . . , excluding

general appropriations acts, decennial reapportionment acts, and emergency acts, shall take effect on the first day of the fourth month following the month of adjournment of the special session at which they were enacted, unless a subsequent date is specified."). In yet another enactment clause, the General Assembly expressly adopted another effective date for most of the provisions of HB 5148. Specifically, the bill's third enactment clause provides "[t]hat the provisions of this act, other than the provisions of the second enactment [the work group provisions detailed above] of this act, shall become effective on July 1, 2022." Thus, absent further legislative action, no inmate would be credited with more than a maximum 4.5 ESCs per 30 days served before July 1, 2022, but eligible inmates could, as of July 1, 2022, be credited with up to 15 ESCs per 30 days served for the entirety of their sentences whether the time was served before or after July 1, 2022.

In 2022, the General Assembly took additional action regarding the ESC system. Specifically, in adopting the 2022 Appropriation Act ("budget"), which was signed by the Governor on June 22, 2022, the General Assembly modified the ESC program by including Budget Item 404(R)(2). 2022 Acts ch. 2 (Spec. Sess. I). Item 404(R)(2) provides that "[n]otwithstanding the provisions of § 53.1-202.3, Code of Virginia, a maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence that is concurrent with or consecutive to a sentence for a conviction of an offense enumerated in subsection A of § 53.1-202.3, Code of Virginia." *Id.* The budget expressly provides that its provisions, to include Item 404(R)(2), were to become "effective on July 1, 2022."[1] *Id.* at § 4-14.00.

---

[1] Code § 1-214(C) provides that "[a] general appropriation act shall take effect from its passage, *unless another effective date is specified in the act*." (Emphasis added.)

4

Accordingly, the pertinent provisions of HB 5148 and the modification of those provisions found in Item 404(R)(2) became effective simultaneously on July 1, 2022. Because at least one of Anderson's convictions was for a disqualifying offense listed in Code § 53.1-202.3(A),[2] VDOC determined that Item 404(R)(2) capped his eligibility for ESCs at 4.5 ESCs per 30 days served.

On August 15, 2022, Anderson filed a petition for a writ of habeas corpus in the Albemarle County Circuit Court, arguing that he was entitled to release under the new ESC system. He contended that VDOC was misapplying Item 404(R)(2). He argued that, properly interpreted, it limited him to a maximum of 4.5 ESCs per 30 days served *only* for the period between July 1, 2022 and June 30, 2024, and that, pursuant to HB 5148, he was entitled to receive up to 15 ESCs per 30 days served for the portions of his sentences that he served before July 1, 2022. Alternatively, he argued that VDOC's interpretation resulted in Item 404(R)(2) violating the constitutional prohibition on *ex post facto* laws and represented a deprivation of his constitutionally guaranteed right to due process. Appellees filed a motion to dismiss Anderson's petition, maintaining that VDOC correctly applied the statutory ESC scheme as modified by Item 404(R)(2) and that neither Item 404(R)(2) nor VDOC's interpretation of it violated any constitutional right or guarantee.

The circuit court heard arguments on November 18, 2022, and denied Anderson's petition from the bench. In its dismissal order memorializing the ruling, the circuit court found that both HB 5148 and Item 404(R)(2) "amended and modified the earned sentence credit system outlined in Va. Code § 53.1-202.3[,]" and neither provision "created a vested or substantive right

---

[2] At oral argument in this Court, Anderson conceded that at least one of Anderson's pertinent convictions was for a disqualifying offense listed in Code § 53.1-202.3(A).

5

before their effective date of July 1, 2022." As such, Anderson "did not have any vested right to earn enhanced sentence credits before" that date.

Anderson noted an appeal to this Court, asserting that the circuit court erred by dismissing his petition and holding that Budget Item 404(R)(2) precludes him from earning enhanced ESCs for time served prior to July 1, 2022. Alternatively, he argues that, if VDOC applied the statutory scheme, including Item 404(R)(2) correctly, such application violates the *ex post facto* and due process clauses of the United States and Virginia Constitutions.

## II. Analysis

### A. Standard of review

Anderson's appeal raises questions of statutory and constitutional interpretation. As such, his arguments are subject to de novo review in this Court. *See Virginia Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022) (statutory interpretation); *Montgomery Cnty. v. Virginia Dep't of Rail & Pub. Transp.*, 282 Va. 422, 435 (2011) (constitutional interpretation).

### B. Statutory ESC system as of July 1, 2022

It is undisputed that, prior to July 1, 2022, Anderson could earn no more than 4.5 ESCs per 30 days served on any of his convictions because HB 5148 had no effect prior to its July 1, 2022 effective date.[3] The dispute centers on the effect on the preexisting ESC program of legislative modifications, HB 5148 and Item 404(R)(2), that simultaneously became effective on July 1, 2022. Anderson contends that, under HB 5148, he was entitled to up to 15 ESCs per 30 days served prior to July 1, 2022, and that any limitation on his ability to earn enhanced ESCs imposed by Item 404(R)(2) applies only to time served after July 1, 2022. Appellees respond

---

[3] Anderson conceded this point both on brief and during oral argument in this Court.

6

that, given that they became effective on the same day, HB 5148 and Item 404(R)(2) must be read together and that doing so establishes that Anderson is entitled to a maximum of 4.5 ESCs per 30 days served for as long as Item 404(R)(2) remains in effect. For the following reasons, we agree with Appellees.

Reaching this conclusion requires that we engage in statutory interpretation. In addressing questions of statutory interpretation, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (internal quotation marks omitted) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). When, as here, multiple legislative enactments share "a common purpose or [are part of] the same general plan[,]" we "consider[ them] as *in pari materia*" and attempt to reconcile them. *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022). In attempting to do so, we recognize that "the mere fact that statutes relate to the same subject or are part of the same general plan does not mean that they cannot also be in conflict." *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999).

1. Conflict between HB 5148 and Item 404(R)(2)

Here, although HB 5148 and Item 404(R)(2) not only address the same subject but address the same statute, Code § 53.1-202.3, they are in conflict. As adopted in 2020, HB 5148 authorized inmates like Anderson to receive up to 15 ESCs per 30 days served for time served on sentences related to "any offense other than those enumerated in subsection A[.]" Code § 53.1-202.3(B); 2020 Acts ch. 50 (Spec. Sess. I). Although Anderson was serving a sentence for abduction, an offense listed in subsection A, *see* Code § 53.1-202.3(A)(5); 2020 Acts ch. 50

7

(Spec. Sess. I), he also was serving sentences for non-disqualifying offenses, rendering at least some of his offenses eligible for HB 5148's enhanced ESC program.[4]

Item 404(R)(2) expressly alters the equation by rendering anyone who is serving both a sentence or sentences for eligible offenses along with a sentence or sentences for a disqualifying offense *ineligible* to receive more than 4.5 ESCs for each 30 days served. Specifically, Item 404(R)(2) provides that "a maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence that is concurrent with or consecutive to a sentence for a conviction of an offense enumerated in subsection A of § 53.1-202.3, Code of Virginia." Accordingly, under the express terms of Item 404(R)(2), the fact that Anderson is serving a sentence for abduction renders all of his offenses ineligible for the enhanced ESC credits provided for in HB 5148.

In cases where two legislative enactments conflict, we often utilize various canons of construction to resolve the conflict. *See, e.g.*, *City of Danville v. Ragland*, 175 Va. 27, 33-34 (1940) (explaining that when two legislative enactments "are in direct conflict and cannot be reconciled, the former is deemed to have been repealed by implication and the more recent expression of legislative intent must prevail"); *Viking Enter., Inc. v. Cnty. of Chesterfield*, 277 Va. 104, 110 (2009) (explaining that "when two statutes do conflict, and 'one statute speaks to a subject generally and another deals with an element of that subject specifically,' the more specific statute is controlling") (quoting *Commonwealth v. Brown*, 259 Va. 697, 706 (2000)). In deploying these canons, we do not use them to select which of the conflicting outcomes we prefer, but rather, only seek to determine how the General Assembly intended (or would have intended if it had considered the question) the conflict be resolved.

---

[4] Appellees have never disputed that, absent Item 404(R)(2), at least some of Anderson's sentences would have been eligible for the enhanced ESC program and that, with those additional ESCs, he would have sufficient credits to be released.

In this case, however, we need not resort to canons of construction in our attempt to determine which of the conflicting provisions controls because the General Assembly expressly provided the answer. The General Assembly specified that Item 404(R)(2)'s limitation on the maximum ESCs available for a person serving at least one sentence for a disqualifying offense applies "[n]otwithstanding the provisions of § 53.1-202.3[.]" 2022 Acts ch. 2 (Spec. Sess. I). As we recently recognized, when the General Assembly provides that an enactment will govern "notwithstanding" other laws, it evinces the General Assembly's intention that the enactment shall be deemed operative if it conflicts with other laws. *See Berry v. Bd. of Supervisors of Fairfax Cnty.*, 302 Va. ___, ___, 884 S.E.2d 515, 525 (2023). Because the General Assembly expressly provided that Item 404(R)(2) governs over any conflicting provision found in Code § 53.1-202.3, Anderson was not eligible for the enhanced sentence credit program created by HB 5148.[5]

---

[5] Even without the "notwithstanding" clause contained in Item 404(R)(2), it is clear that the General Assembly intended for Item 404(R)(2) and any other provisions contained in the budget to prevail over other laws with which they might conflict. The enacted budget includes § 4-13.00, entitled "CONFLICT WITH OTHER LAWS[,]" which provides that

> [n]otwithstanding any other provision of law, and until June 30, 2024, the provisions of this act shall prevail over any conflicting provision of any other law, without regard to whether such other law is enacted before or after this act; however, a conflicting provision of another law enacted after this act shall prevail over a conflicting provision of this act if the General Assembly has clearly evidenced its intent that the conflicting provision of such other law shall prevail, which intent shall be evident only if such other law (i) identifies the specific provision(s) of this act over which the conflicting provision of such other law is intended to prevail and (ii) specifically states that the terms of this section are not applicable with respect to the conflict between the provision(s) of this act and the provision of such other law.

## 2. Anderson's retroactivity argument is mistaken

Given the foregoing, Anderson asserts that, for the period of time he served prior to July 1, 2022, at least some of his sentences are eligible for enhanced ESCs under the program created by HB 5148. He argues that, in an enactment clause, the General Assembly directed that the program created by HB 5148 be applied retroactively and nothing in Item 404(R)(2) demonstrates that it was to apply retroactively. From this, he reasons that Item 404(R)(2) should "be given only prospective effect" and that he "should receive earned sentence credits under [the program created by HB 5148] for his time served prior to July 1, 2022." Although much of what Anderson states regarding retroactive application of statutes being disfavored is true, his argument suffers from a fatal flaw: the conclusion that he is ineligible for enhanced ESCs for time served prior to July 1, 2022, does not involve a retroactive application of Item 404(R)(2).

A legislative enactment is retroactive when it "'attaches new legal consequences to events completed before its enactment.'" *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 295 (2022) (quoting *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999)). *See also* Black's Law Dictionary 1575 (11th ed. 2019) (defining "retroactive law" as "[a] legislative act that looks backward or contemplates the past, affecting acts or facts that *existed before the act came into effect*") (emphasis added). Here, although Anderson did serve portions of his multiple sentences before July 1, 2022, nothing about Item 404(R)(2) attached "new legal consequences" to his service of those sentences or altered any right he had to earn ESCs "that existed before [Item 404(R)(2)] came into effect."

---

2022 Acts ch. 2 (Spec. Sess. I). It is hard to imagine a more definitive statement of the General Assembly's intention that the provisions of the budget enacted in 2022 should be given effect over any other conflicting law, including the changes to Code § 53.1-202.3 included in HB 5148.

10

As Anderson concedes, "[b]efore July 1, 2022," he was entitled to "a maximum of 4.5 ESCs for every 30 days served" on a sentence. As a result of Item 404(R)(2), Anderson remained entitled to "a maximum of 4.5 ESCs for every 30 days served" after July 1, 2022. In short, nothing about Anderson's prior time served or entitlement to ESCs changed when Item 404(R)(2) went into effect. The *status quo* was unchanged, and thus, no "new legal consequences" were imposed upon Anderson as a result of Item 404(R)(2).

That a different *status quo* might have existed, and, if HB 5148 had become effective *before* July 1, 2022, would have existed, does not change the analysis. No matter how vigorously Anderson argues that he would have been entitled to enhanced ESCs if HB 5148 had not been adopted with a delayed effective date of July 1, 2022, or if it had gone into effect on that date without Item 404(R)(2)'s modification, HB 5148 did not go into effect prior to July 1, 2022, and has never been in effect without the modification.[6] As a result, neither Anderson nor others similarly situated have ever been eligible to receive enhanced ESCs under HB 5148. Accordingly, our interpretation of the effect of Item 404(R)(2) does not alter any legal right or entitlement that existed before its effective date, and thus, it does not constitute retroactive legislation.[7]

---

[6] We previously have recognized that, as a general matter, one does not have a right to rely on the indefinite continuation of an existing statutory scheme. *See*, *e.g.*, *McCabe v. Commonwealth*, 274 Va. 558, 566 (2007). Anderson's claim here does not even reach that threshold because it is not based on an existing statutory scheme, but rather, on a statutory scheme that, as of yet, has not come into effect.

[7] Item 404(R)(2) addresses whether an inmate is eligible to receive enhanced sentencing credits under HB 5148. In other words, it deals with *who* may receive the benefit of the enhanced ESC program that went into effect on July 1, 2022. It does not affect *how* ESCs are to be earned by those who were eligible to receive them when the program became effective on July 1, 2022. Thus, those eligible for the enhanced ESC program as of July 1, 2022 are, consistent with HB 5148's retroactivity clause, potentially entitled to enhanced ESCs for time served both before and after July 1, 2022.

C. Item 404(R)(2) is constitutional

Anderson asserts that, if Item 404(R)(2) renders him ineligible for the enhanced ESC program created by HB 5148, it is unconstitutional. Specifically, he argues that it violates the *ex post facto* and due process clauses of the United States and Virginia Constitutions.[8] We disagree.

1. *Ex post facto*

Article I, § 10 of the United States Constitution provides that "[n]o state shall . . . pass any . . . *ex post facto* law[.]" A statute violates the *ex post facto* clause of Article I, § 10 when it "punishes as a crime an act previously committed, which was innocent when done; . . . makes more burdensome the punishment for a crime, after its commission, or . . . deprives one charged with crime of any defense available according to law at the time when the act was committed[.]" *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). As a result, "[i]t is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert v. Florida*, 432 U.S. 282, 294 (1977).

The clause has been applied to state statutes that seek to change sentence credit programs such as Virginia's ESC program. In *Lynce v. Mathis*, the United States Supreme Court concluded that a Florida statute that "retroactively canceled" sentence credits an inmate

---

[8] In his briefs, Anderson does not quote the *ex post facto* or due process clauses of the Virginia Constitution, does not reference or cite any Virginia cases or other authorities interpreting those clauses, and does not offer any comment or argument regarding their adoption. Instead, he cites only to federal cases interpreting the relevant clauses of the United States Constitution. In resolving this appeal, we assume, but do not decide that, in this context, the protections afforded by the respective *ex post facto* and due process clauses are coterminous. *But see*, *Martin v. Commonwealth*, 64 Va. App. 666, 674-75 (2015) (declining to reach claim based upon the *ex post facto* clause of the Virginia Constitution because appellant exclusively relied upon federal authority and made no argument based on the specific text or history of the Virginia clause).

previously had earned and had used to effectuate his release violated the clause because it "disadvantaged" the inmate and "resulted in his rearrest and prolonged his imprisonment." 519 U.S. 433, 446-47 (1997). The decision in *Lynce* relied upon *Weaver v. Graham*, which held that a Florida law, which reduced the availability of so-called good conduct credits from the levels that were available when the inmate had committed his offense, ran "afoul of the prohibition against *ex post facto* laws" because "the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." 450 U.S. 24, 35-36 (1981).

Against this backdrop, it is clear that Item 404(R)(2) does not violate the prohibition on *ex post facto* laws. It neither creates a new crime nor deprives Anderson of a previously existing defense. It does not increase his possible punishment above what was available when he committed his offenses. It does not reduce the availability of ESCs from the levels that were available when Anderson committed his offenses. In fact, because Anderson was eligible to receive 4.5 ESCs per 30 days served both before and after the effective date of Item 404(R)(2), Item 404(R)(2) effectuated no change at all in his ability to earn ESCs.[9] Accordingly, it does not violate the constitutional prohibition on *ex post facto* laws.

## 2. Due process

Anderson next asserts that interpreting Item 404(R)(2) to preclude him from receiving enhanced ESCs for time that he served before July 1, 2022, violates his due process rights.

---

[9] Despite these undisputed facts, Anderson asserts he actually "earned" more than 4.5 ESCs per 30 days served because "the enactment of HB 5148 in 2020 created an expectation that [enhanced] credits would be awarded [to Anderson] in accordance with" HB 5148. Regardless of his expectations, Anderson could not and did not earn enhanced sentence credits under HB 5148 before July 1, 2022, because HB 5148 did not go into effect prior to July 1, 2022, and has never been in effect without the modification that precludes inmates in Anderson's situation from earning more than 4.5 ESCs per 30 days served.

13

Although it is true that an inmate may have a cognizable due process interest in a state's earned sentence credit program, *see Wolff v. McDonnell*, 418 U.S. 539 (1974), our interpretation of Item 404(R)(2) does not offend any due process interest that Anderson might possess.

In *Wolff*, the United States Supreme Court recognized that, although "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison[,]" when a state has

> created the right to good time and . . . recogniz[es] that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Id.* at 557. In recognizing such an interest, the Supreme Court in *Wolff* analogized the interest to a property interest, noting that it "parallels the accepted due process analysis as to property" and that it had "consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests." *Id.* at 557-58.

The analogy to property interests demonstrates the flaw in Anderson's argument. Before a person may be deprived of an interest, whether in property or in an ESC program, in violation of the due process clause, the person must actually possess such an interest. As the United States Supreme Court has explained, "[t]o have a [protected] property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural

14

protection must establish that one of these interests is at stake."); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Anderson has never had a legitimate interest in an ESC program in which he could receive more than 4.5 ESCs per 30 days served because no such program has ever been in effect. Accordingly, Anderson has never had a cognizable interest in such a program, and thus, Item 404(R)(2) does not offend Anderson's due process rights.

### III. Conclusion

All of Anderson's arguments suffer from a faulty premise—that, for at least some period of time, HB 5148 entitled him to receive more than 4.5 ESCs per 30 days served. However, given HB 5148's delayed effective date and its modification by Item 404(R)(2), Anderson has never been eligible to receive enhanced ESCs under HB 5148. Accordingly, he is not entitled to a writ of habeas corpus, and the judgment of the circuit court is affirmed.

*Affirmed*.